BROOKCHESTER, INC., SECTION I, A CORPORATION OF THE STATE OF NEW JERSEY, *ET AL.*, PETITIONERS, v. CHESTER K. LIGHAM, DIRECTOR OF THE OFFICE OF RENT CONTROL OF THE STATE OF NEW JERSEY, RESPONDENT.

Argued January 24, 1955—Decided February 14, 1955.

*Mr. Walter D. Van Riper* argued the cause for the petitioners (*Mr. George I. Marcus,* attorney).

*Mr. Harold Kolovsky*, Assistant Attorney-General, argued the cause for the respondent (*Mr. Grover C. Richman, Jr.*, Attorney-General of New Jersey, attorney; *Mr. Anthony Zoppi*, Deputy Attorney-General, on the brief).

By leave of court, brief was filed for the intervenor, Brookchester Community Association, by *Mr. James A. Major*, of counsel (*Mr. Herbert F. Myers, Jr.*, attorney).

The opinion of the court was delivered by

BURLING, J. This is a petition for declaratory judgment, in lieu of prerogative writ, filed in the Superior Court, Appellate Division, pursuant to *R. R.* 4:88–10, to review administrative rules (designated herein as "Change No. 5" and "Change No. 7") promulgated by the State Rent Control Director, the effect of which was to subject rental housing properties of the petitioners to state rent control under the State Rent Control Act of 1953, *L.* 1953, *c.* 216, *N. J. S.* 2A:42–14 *et seq.* Prior to hearing in the Superior Court, Appellate Division, we certified the matter on our own motion for disposition in this court.

The jurisdiction of the court under *R. R.* 4:88–10 was invoked in this matter in a petition for declaratory judgment filed by Brookchester, Inc., *Sections* 1 to 10, inclusive, each "Section" being a separate corporation of the State of New Jersey, and each having its principal office in the City of Hackensack, Bergen County, New Jersey. The respondent is Chester K. Ligham, Director of the Office of Rent Control of the State of New Jersey (hereinafter referred to as the State Director).

Petitions for intervention were filed by 16 other New Jersey corporations, namely Stevens Gardens, Inc.; Continental Heights, Inc.; Belle-View Gardens, Inc.; Wright Village, Inc.; The Cambridge, Inc.; Maybrook Gardens, Section Four; Maybrook Gardens, Section Five; Maybrook Gardens, Section Three; Floral Park, Inc.; Floral Park, Section II, Inc.; Woodcliff Gardens, Section I, Inc.; Wood-

cliff Gardens, Section II, Inc.; Linden Arms, Inc.; Sandford, Inc.; Craigholm, Inc.; and Stanwyck, Inc. Their petitions to intervene were granted by the Superior Court, Appellate Division, and they filed petitions for declaratory judgment herein. The Superior Court, Appellate Division, also granted a petition to intervene filed by a group of tenants organized under the name of Brookchester Community Association.

After intervention of the parties above named, it was stipulated that all the petitioners' housing projects involved in these actions were erected and constructed under and pursuant to the provisions of the National Housing Act which provided for the insurance of mortgage loans on said housing projects by the Federal Housing Administration, and all of these housing accommodations are subject to the liens of such mortgages; that all of said projects were commenced during the year 1948 and completed in the year 1950, under and pursuant to the provisions of the rules and regulations of the National Housing Act, namely under *section* 608 of *Title* VI of the *Act of* June 27, 1934, *c.* 847, as added May 26, 1942, *c.* 319, *sec.* 11, 56 *Stat.* 303, and the amendments and supplements thereto (see 12 *U. S. C. A., sec.* 1743); that under the National Housing Act the Federal Housing Commissioner (also sometimes referred to in the federal legislation as the Administrator) adopted regulations which included, *inter alia*, the following requirement:

"A corporate mortgagor shall be regulated through the ownership by the Commissioner of certain shares of special stock (or other evidence of beneficial interest in the mortgagor) which stock or interest will acquire majority voting rights in the event of default under the mortgage or violation of provisions of the charter of the mortgagor or the violation of any valid agreement entered into between the mortgagor, the mortgagee and/or the Commissioner, but only for a period co-extensive with the duration of such default or violation. The shares of stock or of beneficial interest issued to the Commissioner, his nominee or nominees and/or the Federal Housing Administration shall be in sufficient amount to constitute *under the laws of the particular State* a valid special class of stock or interest and shall be issued in consideration of the payment of the Commissioner of not exceeding in the aggregate $100. Such stock shall be

represented by certificates issued in the name of the Commissioner, and/or in the name of his nominee or nominees, and/or in the name of the Federal Housing Administration, as the Commissioner shall require. Upon the termination of all obligations of the Commissioner under his contract of mortgage insurance or any succeeding contract or agreement covering the mortgage obligation, including the obligation upon the Commissioner to issue debentures as a result of such termination, all regulation and restriction of the mortgagor shall cease. When the right of the Commissioner to regulate or restrict the mortgagor shall so terminate, the shares of special stock or other evidence of beneficial interest shall be surrendered by the Commissioner upon reimbursement of his payments therefor plus accrued dividends, if any, thereon. Such regulation *and the additional regulation or restriction hereinafter provided in this Section shall be made effective by incorporation of appropriate provisions therefor in the. charter or other instrument under which the mortgagor is created, or by agreement.* In all cases where the insured mortgage is in excess of $200,000 the mortgagor must be a corporation or a trust." (Emphasis supplied.)

The Federal Housing Commissioner's regulations included in the stipulation also required incorporation in the corporate charter or agreement of the following provisions:

"(a) No charge shall be made by the mortgagor for the accommodations offered by the project *in excess* of a rental schedule to be filed with the Commissioner and approved by him or his duly constituted representative prior to the opening of the project for rental, which schedule shall be based upon a maximum average rental fixed prior to the insurance of the mortgage, and shall not thereafter be changed except upon application of the mortgagor to, and the written approval of the change by, the Commissioner.

(b) The established maximum rental shall be the *maximum* authorized charge against any tenant for the accommodations offered and shall include all services, except telephone, gas, electric, and refrigeration facilities. Charges permitted in addition to such maximum rental shall be subject to the approval of the Commissioner.

(c) The regulation and restriction provided for in the above paragraphs (a) and (b) of this subsection shall not apply so long as the maximum rents are regulated by another agency of the United States Government. Such maximum rental as established by such agency of the United States will be accepted by the Commissioner as an approved rent schedule. Upon the expiration of the authority of any such agency to fix maximum rentals, the established maximum rental schedule then in force with respect to the project shall be the established maximum rental schedule within the provisions of (a) and (b) above, and shall not thereafter be changed except upon approval of the Commissioner." (Emphasis supplied.)

It was stipulated that maximum rentals for the petitioners' properties subject to these proceedings have been fixed by the Federal Housing Commissioner, and are in effect; that these properties are located in municipalities which have made the State Rent Control Act of 1953 (*N. J. S.* 2*A*:42–14 *et seq.*), *supra,* operative therein; that these housing projects were exempted from the provisions of the Housing and Rent Act of 1947 (50 *App. U. S. C. A., secs.* 1892–3) by virtue of the fact that they were erected subsequent to February 1, 1947, and that said housing accommodations were also excepted under the original rules and regulations of the State Director, dated July 31, 1953. These rules and regulations were subsequently changed on April 23, 1954, by Change No. 5, and on May 26, 1954, by Change No. 7, copies of the pertinent portions of each of which orders were incorporated in the stipulation. The pertinent portion of Change No. 5 excepted from the operation of the State Rent Control Act of 1953 (*N. J. S.* 2*A*:42–14 *et seq.*), *supra,* new housing space completed

"(1) during the period between February 1, 1947 and August 1, 1953, in projects or buildings containing less than 50 units. This exception shall not include housing space in projects or buildings containing 50 units or more; and housing space in such projects or buildings which are located in municipalities in which the Act is operative shall be subject to control;

(2) on or after August 1, 1953;"

The State Director's order referred to as Change No. 7, *ante,* added a proviso authorizing decontrol of housing space in properties subjected to control by the above quoted provisions of Change No. 5, *ante,* conditioned upon application by the landlord on notice to the tenants, and proof by the landlord, that "there are and have been no manipulative or speculative practices and rental and leasing practices which now tend or have tended to unreasonably increase rentals therein."

Finally it was stipulated that all of the tenants in the subject projects have leases which include the following terms:

"22. It is distinctly understood and agreed that in the event any governmental agency having jurisdiction shall permit the Landlord to increase the rent herein specified during the term and without an additional lease, then and in that event the rent herein specified shall be increased to such amount as is permitted by the governmental agency and the said increased rent shall be effective and operative and the Tenant agrees to pay such increased rent on the first day of the month, following the date that such increase in rent is permitted by the governmental agency and monthly thereafter, in accordance with the terms and conditions herein written."

These are the crucial facts upon which a declaratory judgment is sought. Based thereon, the petitions for declaratory judgment seek declaratory relief involving the following questions:

(a) Is the State Rent Control Act of 1953 (*N. J. S. 2A:42–14 et seq.*), *supra*,* an unconstitutional interference with contractual rights between landlord and tenant?

(b) Are Change No. 5 and Change No. 7, *ante*, invalid as interference with contractual rights between landlord and tenant?

(c) Does the State Rent Control Act of 1953 (*N. J. S. 2A:42–14 et seq.*), *supra*,* exempt from state rent control properties subjected to mortgages insured by the Federal Housing Administration and subject to maximum rental limitations effected by the Federal Housing Commissioner?

(d) Are Change No. 5 and Change No. 7, *ante*, issued by the State Director, arbitrary, discriminatory, unreasonable and void because they subject to state rent control housing accommodations of 50 or more units, and exempt housing accommodations, of the same category, having less than 50 units?

I.

▆▆▆▆ The initial question involved, whether the State Rent Control Act of 1953 (*N. J. S. 2A:42–14 et seq.*), *supra*,

---

\* Note: The petitions for declaratory relief herein neither seek nor require consideration of the amendatory state legislation, *L.* 1954, *c.* 260, extending state rent control to June 30, 1956 (effective December 22, 1954).

is an unconstitutional interference with contractual rights, is ruled adversely to the petitioners' contentions by our recent decision in *Jamouneau v. Harner*, 16 *N. J.* 500, 514–522 (1954), wherein we held that the statute was a valid exercise of the police power of the State. Liberty of contract, or freedom in the use or disposition of property, is not violated by restrictions imposed thereon under the police power, unless the restraint imposed is arbitrary. *National City Bank of New York v. Del Sordo*, 16 *N. J.* 530, 541–542 (1954).

## II.

The second question involved is whether Change No. 5 and Change No. 7, *ante*, insofar as they subject the petitioners' property to state rent control, violate the contractual rights of the landlords and the tenants expressed in the leases of the subject housing accommodations. We find no violation of contractual rights arising by subjection of the properties to state rent control. The provision (hereinbefore quoted) incorporated in each lease does not specifically confine the rental payment to control by a *federal* government agency, and would seem to entitle both the landlord and the tenant to protection under appropriate valid orders of a state rent control agency. If not, the principles expressed in the *Jamouneau* and *National City Bank of New York* cases, *supra,* control. The police power of the State to this extent is superior to the contractual rights of the landlords and tenants.

## III.

The third question involved is whether the State Rent Control Act of 1953 (*N. J. S.* 2A:42–14 *et seq.*), *supra,* exempts from state rent control housing accommodations consisting of properties subjected to mortgages insured by the Federal Housing Administration and subject to maximum rental limitations effected by the Federal Housing Commissioner. We find that the state statute effects no such exemption.

The preamble to *L.* 1953, *c.* 216, *N. J. S.* 2*A* :42–14 *et seq.*, contained the following language:

"\* \* \* Federal rent control is presently due to expire on July thirty-first, one thousand nine hundred and fifty-three, and the enactment of an adequate State rent control law, to become operative upon the termination of Federal rent control, is imperative. \* \* \*"

The 1953 act itself defined "Federal rent control" (*sec.* 1, *N. J. S.* 2*A* :42–14) as:

"\* \* \* the operation of any Act of Congress and of any rule or regulation promulgated pursuant to the authority of any Act of Congress and the administration of any such act or rule or regulation by any department, authority, agent, officer, or other administrative agency, authority or board of the Government of the United States in respect to housing space and the rental thereof in effect and operation *in the State of New Jersey or in any part or parts thereof.*" (Emphasis supplied.)

---

Note: As hereinbefore noted, neither the petitions for declaratory judgment nor the questions involved herein require consideration of *L.* 1954, *c.* 260, effective December 22, 1954, which extended state rent control to June 30, 1956 from its original expiration date of December 31, 1954, and amended the act in other respects not pertinent hereto.

---

These references in the State Rent Control Act of 1953, *ante,* clearly referred to the federal rent controls established under the Housing and Rent Acts (including the Acts of June 30, 1947, *c.* 163, 61 *Stat.* 193; March 30, 1948, *c.* 161, 62 *Stat.* 93; March 30, 1949, *c.* 42, 63 *Stat.* 18; June 23, 1950, *c.* 354, 64 *Stat.* 255; June 30, 1952, *c.* 530, *Title* II, *sec.* 201(*a*), 66 *Stat.* 306; April 30, 1953, *c.* 31, *sec.* 2, 67 *Stat.* 24—see 50 *App. U. S. C. A., sec.* 1881 *et seq.*), namely, effective generally to July 31, 1953 and effective in defense rental areas to April 30, 1954.

The State Rent Control Act of 1953, *ante,* related to "the control of rents within specified areas of operation." *Sec.* 7(*b*), *N. J. S.* 2*A* :42–20(*b*). The basis for state controls was made to depend upon rentals under federal rent control orders existing July 31, 1953. *Sec.* 19, *N. J. S.* 2*A* :42–32.

This latter provision clearly pointed up the legislative intent to relate the state legislation to the general federal rent controls established under the war power [see *Woods v. Cloyd W. Miller Co.*, 333 *U. S.* 138, 146, 68 *S. Ct.* 421, 92 *L. Ed.* 596, 603 (1948)], namely, the Housing and Rent Acts, *ante*, which were destined to terminate on that date, July 31, 1953. The provision for continuity of federal rent control in certain *areas* of this State, *sec.* 30, *N. J. S.* 2*A*:42–43, obviously related to the federal rent controls continued in defense rental areas until April 30, 1954 under the Housing and Rent Acts, *ante*. Similarly illuminating is *sec.* 36, *N. J. S.* 2*A*:42–49, authorizing receipt by the State Rent Control Director of federal rent control records relative to "this State or any *area* thereof." (Emphasis supplied.) See also *sec.* 35, *N. J. S.* 2*A*:42–48.

For these reasons we are of the opinion that the State Rent Control Act of 1953, *ante*, did not contemplate or intend exemption from state rent control of properties subject to maximum rent orders issued by the Federal Housing Commissioner, but related to federal *area* rent controls under the Housing and Rent Acts, *ante*.

## IV.

█ The fourth question involved in this matter is whether Change No. 5 and Change No. 7, *ante*, are arbitrary and unreasonable, without statutory authority, and are therefore void.

The matter as presented demonstrates that the State Director had excepted from the operation of state rent controls all rental housing of the category encompassing the petitioners' properties. No attack on this prior existing order is made by any party hereto. We assume for the purpose of the declaratory judgment sought by this petition that the exception of this class of properties was within the legislative contemplation of *section* 9 of the State Rent Control Act of 1953, *N. J. S.* 2*A*:42–22. (In passing it is noted, without comment, that *section* 9 was not amended by

*L.* 1954, *c.* 260, *supra*). *Section* 9 enabled the State Director to make "classifications and differentiations and * * * such adjustments or reasonable exceptions, *according to the use or character of an area or of property*, or both, as in the judgment of said director are *necessary or proper in order to effectuate the purposes of this act.* * * *"* (Emphasis supplied.) *Section* 9 also authorized special exceptions for housing rented for seasonal use; tenant housing on farms; housing quarters occupied by domestics, janitors, managers and the like; and "luxury" housing. No exception according to the size of an apartment building was authorized, nor is an exception based on the quantity of apartments compatible with the terms "use or character" of property. It may well be, however, that rental housing which is by corporate charter and by voluntary agreement subject to control as to *maximum* rentals by lawful regulation of the Federal Housing Commissioner during the existence of the federally insured mortgage, has a definite distinguishing "character" sufficient ·to sustain the exception of all such properties from state rent control. The purpose of the State Rent Control Act of 1953, *ante,* was quite obviously to stabilize rentals in emergency areas and prevent extortionate rent increases resulting from a shortage of housing. See *Jamouneau v. Harner, supra* (16 *N. J.,* at *pages* 516–518). The purpose of the National Housing Act, *supra,* and its various amendments was to encourage construction of additional housing facilities, and, as to rental housing, to encourage and provide for reasonable rentals to tenants. See 12 *U. S. C. A. sec.* 1713(*b*), including the amendment thereto effected by the Act of April 20, 1950, *c.* 94, *Title* I, *sec.* 106, 64 *Stat.* 53. Exceptions from state rent control of properties where maximum rentals are controlled by the Federal Housing Commissioner, therefore, is not in conflict with the purposes of the State Rent Control Law. Such an exception was deemed proper by the State Director and no question as to its validity has been asserted herein. A similar exception was written into the Housing and Rent Acts, *ante,* by the

Congress, and was upheld as reasonable in judicial tests. *E. g., Woods v. Cloyd W. Miller Co.,* 333 *U. S.* 138, 145, 68 *S. Ct.* 421, 92 *L. Ed.* 596, 602–603 (1948). The propriety of relinquishing state control under these circumstances is attested by the analogous legislative sublimation of state rent control to federal area rent control, *i. e.,* in defense rental areas until April 30, 1954 under the Housing and Rent Acts, *ante,* under *section* 30 of the State Rent Control Act of 1953, *ante, N. J. S.* 2A :42–43.

Change No. 5 and Change No. 7, *ante,* however, in the respect challenged depend upon the number of units in a group, *i. e.,* the number of apartments in a rental housing enterprise. This has no reasonable relationship to the purpose of the state enactment. It is not a "character" factor, but a quantity factor, the very use of which implies the absence of an emergency shortage of housing, and therefore is foreign to the powers given the State Director by the State Rent Control Act of 1953, *ante.* It results in this case in unjust discrimination, for rental housing, in a given rent control area, of the same character (namely controlled as to maximum rents by the Federal Housing Commissioner) is classified so that some properties are permitted in that area to charge maximum rentals under the Federal Housing Commissioner's regulations and others are denied that right under an arbitrary quantitative rule not contemplated by the statute.

This being so, Change No. 5 and Change No. 7, *ante,* in the respect challenged are invalid and ineffective and the provision therein subjecting projects or buildings containing 50 units or more, completed between February 1, 1947 and August 1, 1953, to state rent control must be set aside.

## CONCLUSION

Upon the basis of the findings of fact, all of which exist by stipulation of the parties, and the conclusions of law expressed in this opinion this court will enter judgment

declaring the respective rights of the parties hereto as follows:

(1) The State Rent Control Act of 1953, *N. J. S.* 2A:42-14 *et seq.*, was not an unconstitutional interference with contractual rights existing between the petitioning landlords and their respective tenants;

(2) The orders promulgated by the State Director of Rent Control and known respectively as Change No. 5 and Change No. 7 were not *per se* violative of contractual rights existing between the petitioning landlords and their respective tenants;

(3) The State Rent Control Act of 1953, *N. J. S.* 2A:42-14 *et seq.*, did not by its pertinent provisions exempt the petitioners' properties from state rent control;

(4) The orders promulgated by the State Director of Rent Control and known respectively as Change No. 5 and Change No. 7, insofar as they purport to subject to control a portion of a class of properties otherwise exempt, by means of a quantitative classification foreign to the State Rent Control Act of 1953, *N. J. S.* 2A:42-14 *et seq.*, constitute arbitrary action in excess of delegated powers by the State Director of Rent Control, and therefore are void and ineffective to that extent, as applied to the rental housing accommodations of the petitioners, and the provisions therein subjecting projects or buildings containing 50 units or more, completed between February 1, 1947, and August 1, 1953, to state rent control are hereby declared void.

HEHER, J. (dissenting in part). I would enter judgment herein in accordance with the dissenting view expressed in *Stuyvesant Town, Inc. v. Ligham,* 17 *N. J.* 473.

Mr. Justice WACHENFELD concurs in this dissent.

*For entry of judgment in accordance with majority opinion*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5.

*For entry of judgment in accordance with minority opinion*—Justices HEHER and WACHENFELD—2.