We find all these contentions to be without merit. *R.*2:11–3(e)(2).

Finally, defendant contends the sentence of three to five years consecutive to any sentence being served was excessive. Considering defendant's prior extensive criminal record, the sentence imposed was indeed lenient. There was no abuse of discretion. *State v. Whitaker*, 79 *N.J.* 503, 512–516 (1979).

The judgment of conviction for possession of a weapon is reversed; the evidence is suppressed and the matter is remanded for a new trial or other appropriate proceedings.

The judgment of conviction for possession of a stolen vehicle and the sentence imposed is affirmed.

HELMSLEY–SPEAR, INC., PLAINTIFF-APPELLANT, v. RENT LEVELING BOARD OF THE BOROUGH OF FORT LEE, BOROUGH OF FORT LEE AND MAX VICTOR, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 29, 1979—Decided November 13, 1979.

Before Judges ALLCORN, MORGAN and HORN.

*Francis B. Rusch* argued the cause for appellant (*Rusch & Litt,* attorneys).

*Paul Kaufman* argued the cause for respondents Rent Leveling Board of the Borough of Fort Lee and the Borough of Fort Lee (*Kaufman & Rosen,* attorneys).

*William Goldberg* submitted the cause for respondent Max Victor on the argument of the cause by *Paul Kaufman* (*William Goldberg* on the brief).

The opinion of the court was delivered by

HORN, J. A. D.

This case was decided at the trial level on stipulated facts from which the following appears. Max Victor, one of the defendants-respondents, prior to 1971 was a tenant in Horizon Tower North, an apartment building in the Horizon House complex in Fort Lee, New Jersey. This complex was managed by Helmsley-Spear, Inc., plaintiff, as agent for the owner. Plaintiff sent to said Victor during the summer of 1971 an invitation to renew his lease for Apartment 1401, the term of which would expire on October 31, 1974, at a monthly rental of $700, which for the proposed three-year term amounted to $25,200. The parties entered into a lease dated August 31, 1971 for a three-year term commencing on November 1, 1971, calling for payment of the following rental installments: $632 a month from 11/1/71 to 4/30/72 ($7,584), $699 a month from 5/1/72 to 10/31/72 ($8,388) and $765 a month from 11/1/72 to 10/31/74, the expiration dated of the term ($9,180), for a total rent of $25,152.

Thereafter defendant Borough of Fort Lee enacted Ordinance 72–1, regulating rent increases. The ordinance became effective on February 1, 1972 and was subsequently superseded by Ordinance 74–32, which became effective on November 6, 1974 and retained substantially all the provisions of Ordinance 72–1. On November 1, 1974 plaintiff and Victor entered into a one-year

renewal lease at a monthly rent of $835. Thereafter, on September 29, 1975 they entered into a further renewal lease for a one-year term commencing November 1, 1975, at the same monthly rent of $835. In June 1976 the provisions of the rent leveling ordinances were preempted by the U.S. Department of Housing and Urban Development (HUD), which determined that the maximum allowable rent on the Victor apartment was $785 a month. Nevertheless, plaintiff and Victor entered into a two-year lease, the term of which ran from November 1, 1976 to October 31, 1978, at a monthly rent of $870.

On May 27, 1977 Victor filed a complaint with the Rent Leveling Board, claiming "excess rent increases in new lease and graduated increases in [prior] leases." The Board made a preliminary finding that plaintiff owed Victor a refund of $2,178 for excessive rents paid under the 1971–1974 step-up lease.

On July 21, 1977 the Board held a hearing on Victor's complaint and affirmed its preliminary finding of the refund owed Victor. The Board decided that the step-up provisions of the lease were governed by the ordinance even though the lease was entered into prior to the ordinance's enactment.

Plaintiff appealed the decision of the Board to the governing body of the borough pursuant to § 16 of Ordinance 74–32. By resolution the governing body declined jurisdiction of the matter. Plaintiff then instituted this action in lieu of prerogative writs.

At the hearing before the trial judge the parties stipulated that a decision in favor of Victor for overpayment of rent would only affect the credits due Victor for the period from November 1, 1971 until November 1, 1976, as a result of HUD's preemption. The judge, by letter opinion dated September 21, 1978, affirmed the action of the Board and awarded $4,498 to Victor, based on the rents received by plaintiff in excess of those permitted by the respective ordinances. The accuracy of the figure was not in dispute. Plaintiff then appealed.

The issues raised in this appeal are: (1) whether the rents reserved under the 1971 lease were prohibited by the terms of the first rent leveling ordinance, No. 72–1, and (2) if so, whether the application of the provisions of the ordinance to the payments required under that lease was an unconstitutional impairment of a contract obligation. We consider these issues together.

The pertinent provisions of Ordinance 72–1 are:

Sec. 2. Establishment of rents between a landlord and a tenant to whom this act is applicable shall hereafter be determined by the provisions of this ordinance. At the expiration of any lease or at the termination of the lease of a periodic tenant, no landlord may request or receive a percentage increase in rent which is greater than the percentage difference between the Consumer Price Index sixty (60) days prior to the expiration or termination of the lease and the Consumer Price Index at the date the lease was entered into with said tenant.

Sec. 3. Any rental increase at a time other than at the expiration of a lease or termination of a periodic lease shall be void. Any rental increase in excess of that authorized by the provisions of this ordinance shall be void.

Sec. 15. No landlord shall after the effective date of this ordinance charge any rents in excess of what he was receiving from the effective date of this ordinance except for increases as authorized by this ordinance.

It cannot be seriously argued that the borough had no right to enact the rent control ordinance, *Inganamort v. Bor. of Fort Lee,* 62 *N.J.* 521 (1973), or that under appropriate circumstances the ordinance may not roll back rents reserved by landlords under leases which preexisted the rent control ordinance, *Albigese v. Jersey City,* 127 *N.J.Super.* 101 (Law Div. 1974), mod. and aff'd 129 *N.J.Super.* 567 (App.Div.1974).

The right of the municipality, however, to roll back rents and thereby curtail a personal constitutional protection (*U.S.Const.,* Amend. V; *N.J.Const.* (1947), Art. I, ¶ 1) of all those adversely affected is not without its limitations. As was stated by Justice

Pashman in *Hutton Pk. Gardens v. West Orange,* 68 *N.J.* 543 (1975):

> . . . Emergency conditions do not create new powers nor do they permit the government to transgress specific constitutional prohibitions, but they may present occasions for the appropriate exercise of powers which would otherwise remain dormant, and they justify flexible applications of constitutional restrictions in order to facilitate rather than obstruct governmental steps necessary to cope with the emergency. *Home Building & Loan Ass'n v. Blaisdell,* 290 *U.S.* 398, 426, 54 *S.Ct.* 231, 235, 78 *L.Ed.* 413, 422 (1934); *Jamouneau v. Harner, supra,* 16 *N.J.* [500] at 514 [at 566]

Ordinarily, legislation operates prospectively, *Neel v. Ball,* 6 *N.J.* 546 (1951); *Ellis v. Caprice,* 96 *N.J.Super.* 539 (App.Div. 1967) and there is generally no constitutional issue such as impairment of contracts concerned in such prospective application. The perceived need for rent control does not in itself exhibit a similar need for retroactive operation of the enabling legislation. *See Pennsylvania Greyhound Lines, Inc. v. Rosenthal,* 14 *N.J.* 372, 381 (1954).

The record in this case is devoid of any evidence that it was necessary to interfere with leases or the rents to be paid under them when made at a time far in advance of the rent controlling enactment. The parties in the instant case agree that the 1971 lease was entered into in the normal course of business and not in anticipation of any pending or intended enactment. There is not the slightest indication that at the time of the making of the lease the parties did not deal at arm's length or that the lease as made was unconscionable. In *Albigese v. Jersey City, supra,* 127 *N.J.Super.* at 114, Judge Larner was careful to record that the retroactive application of the ordinance (for a comparatively short interval) was warranted by the circumstances, *i. e.,* to fill the void which was created by the termination of federal rent controls and to eliminate the unfair advantage gained by landlords who acted in anticipation of impending state or local legislation. No such circumstances appear in the instant case. We find by reason of this situation and the application of equitable principles as well as common

sense that Victor is not entitled to reap a truly unexpected windfall. His failure to recover the alleged excess under the facts shown here does not and will not have any adverse effect on the salutary purposes of the rent control ordinance.

Generally, legislative enactments are not given retrospective application unless such an intention is manifested clearly by the terms thereof. *Skulski v. Nolan,* 68 *N.J.* 179 (1975); *Rothman v. Rothman,* 65 *N.J.* 219 (1974). The language of Ordinance 72–1 does not clearly indicate that it was intended to operate upon preexisting leases. In *Albigese* the Jersey City rent control ordinance, enacted February 20, 1973 and effective March 12, 1973, clearly provided for a rollback of rents to the levels in existence on January 11, 1973, a comparatively short interval between the introduction of the ordinance and its adoption, and as stated therein effected a rational public purpose for the rollback.

So also in *Woodcliff Management v. North Bergen Tp.,* 127 *N.J.Super.* 123 (Law Div.1974), which dealt with the North Bergen Township rent control ordinance adopted on December 16, 1971 and amended on June 21, 1973. That ordinance also clearly provided for its retroactivity. Section 5 thereof directed that:

> Any rent increase imposed after January 11, 1973, the date of the expiration of Federal price controls, to the extent that such increase is in excess of that which is permitted by this Ordinance is hereby declared to be null and void and such excess rent shall be refunded to the tenant by the landlord forthwith.

Our reading of Ordinance 72–1 leads us to conclude that at best the question of rollback of the rents contracted for by the parties to the lease of 1971 was ambiguous and is subject to a fair reading that it was intended to operate only at the expiration of the terms of leases in existence when the ordinance was enacted.

Accordingly, we conclude that the judgment entered in favor of Victor, insofar as the sum of $2,178 determined to be exces-

sive under the 1971–1974 lease is concerned, is erroneous. However, in the light of our determination we are uncertain whether the rent payments contracted for in the successive leases (until HUD preempted the authority of the Rent Leveling Board) were in fact in violation of the ordinances and, if so, to what extent. For this reason we vacate the judgment entered in the trial tribunal and remand the matter to the Rent Leveling Board to make a determination, consistent with this opinion, as to what amount, if any, Victor is entitled to recover from plaintiff under the leases from November 1, 1974. We do not retain jurisdiction.