SOUTH HAMILTON ASSOCIATES, A PARTNERSHIP OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MAYOR AND COUNCIL OF THE TOWN OF MORRISTOWN AND THE BOARD OF RENT LEVELING OF THE TOWN OF MORRISTOWN, DEFENDANTS-APPELLANTS.

Argued March 5, 1985—Decided June 17, 1985.

438

*Edward A. Berman* argued the cause for appellants (*Wacks, Hersh, Ramsey, Berman & Kimmel,* attorneys; *Sheila M. Hagerty,* on the brief).

*Michael Pesce* argued the cause for respondent (*Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone,* attorneys; *Michael Pesce* and *Alan R. Hammer,* of counsel).

The opinion of the Court was delivered by

GARIBALDI, J.

The issue here is whether a municipality may correct a defective ordinance by retroactively enacting another ordinance

that by its terms, interferes with contract rights established during the period between the defective and retroactive ordinances. The Appellate Division held that since there was no rational public purpose to support the retroactive provisions of the ordinance, it was invalid and of no force and effect. Based upon a dissent in the Appellate Division, the municipality appealed to this Court as a matter of right pursuant to Rule 2:2–1(a)(2).

I

South Hamilton Associates (South Hamilton) is the owner of a multi-family apartment building comprised of sixty-eight residential apartment units, located in Morristown, New Jersey. The Town Council of the Town of Morristown (Council) is the governing body of Morristown, organized and existing pursuant to the provisions of Title 40 of the New Jersey Statutes.

Three ordinances are involved in this case. Ordinance No. 0–33–81 (first ordinance) was adopted by the Council on November 24, 1981.[1] This vacancy decontrol ordinance provided that upon the voluntary vacation of a residential apartment, the apartment, subject to the landlord's application to and approval by the Division of Rent Leveling, would be exempt from rent control for the new tenant's initial term. All the Council members except Councilman Barber voted for the adoption of the first ordinance.

On March 25, 1982 the Council attempted to repeal the first ordinance by adopting Ordinance No. 0–4–82 (second ordinance).[2] Pursuant to the second ordinance, Morristown would

---

[1]The first ordinance was entitled "An Ordinance to Amend, Revise and Supplement the 'Code of the Town of Morristown, New Jersey, 1980' Adopted May 27, 1980, Specifically to Amend Chapter 164 Thereof Entitled 'Rent Control.'"

[2]The second ordinance was entitled "An Ordinance to Repeal an Ordinance Which Amended, Revised and Supplemented the 'Code of the Town of Morris-

no longer have had vacancy decontrol. The effective date of the second ordinance was March 12, 1982, one day after its first reading.

The entire Council was present for the first reading of the second ordinance.[3] At the second reading, only five of the seven Council members were present. Three voted for the ordinance, one voted against it, and one abstained.[4] The Council incorrectly believed and represented that the second ordinance had been duly adopted, and it caused the ordinance to be published.

■ Morristown is a Faulkner Act, Plan F Municipality (*N.J. S.A.* 40:69A–74) and as such is governed by *N.J.S.A.* 40:69A–180(a), which provides

> Council shall determine its own rules of procedure, not inconsistent with ordinance or statute. A majority of the whole number of members of the council shall constitute a quorum, *but no ordinance shall be adopted by the council without the affirmative vote of a majority of all the members of the council.* [Emphasis added.]

Since a majority of the members of the Council did not vote for the adoption of the second ordinance, the Council now concedes that the March 25, 1982 vote resulted in the defeat of the second ordinance and the continued effectiveness of the first ordinance. Thus, there is no issue before us as to the invalidity of the second ordinance.

On October 14, 1982, the Council successfully repealed the first ordinance (the vacancy decontrol ordinance) by adopting Ordinance No. 0–25–82 (third ordinance), which provides in pertinent part:

---

town, New Jersey, 1980' Adopted May 27, 1980, Specifically to Amend Chapter 164 Thereof Entitled 'Rent Control.'"

[3]Mr. Barber, Mses. Koch, Montgomery, and Rolio voted for the ordinance; Ms. Brady and Messrs. Denman and Kauffman voted against it.

[4]Council members Koch, Montgomery, and Rolio voted yes; Council member Denman voted no; Council President Kauffman abstained.

WHEREAS, Ordinance No. 0–33–81 was adopted by the Town Council on the 24th day of November, 1981, and took effect December 3, 1981, and under the present circumstances it is in the best interests of all the citizens of the Town of Morristown to repeal vacancy [rental] decontrol.

BE IT ORDAINED by the Council of the Town of Morristown ... that Ordinance 0–33–81 is repealed effective as of March 12, 1982.

SECTION I. Chapter 164, Section 3 of the Code of the Town of Morristown shall be amended by the deletion of the following:

### 164–3C *Rental Decontrol.*

SECTION II. Upon taking effect, this ordinance shall be retroactive to March 12, 1982. The allowable rent for any apartment becoming vacant on or after March 12, 1982, shall be the rent permitted pursuant to Chapter 164 of the Code of the Town of Morristown [i.e., the general rent control ordinance] excluding § 164–3C thereof dealing with Rental Decontrol. Any increase in excess of that permitted amount shall be void.

All seven members of the Council were present at the October 14, 1982 Council meeting. Six Council members (Koch, Montgomery, Rolio, Denman, Barber, and Council President Kauffman) voted for the third ordinance; Council member Brady voted against it. The vote on the third ordinance differed from the March 25, 1982 vote on the second ordinance in that the two previously-absent members were present, with one voting "yes" (Barber) and one "no" (Brady). In addition, one Council member (Denman) changed his vote from "no" to "yes," and Council President Kauffman changed his abstention to a "yes" vote. At the October 14, 1982 meeting, Council member Barber stated that he would have voted in favor of the second ordinance to repeal vacancy decontrol had he been present at the March 25, 1982 Council meeting.

The third ordinance was made effective retroactively to March 12, 1982, the proposed effective date of the invalid second ordinance. Accordingly, in enacting the third ordinance the Council attempted to roll back base rentals on apartments vacated after March 12, 1982 to levels permissible under Chapter 164 of the Code of the Town of Morristown, the validly enacted ordinance governing rent controls. Consequently, for apartments vacated after March 12, 1982, landlords were required prospectively to reduce the rent to the level that would

have been allowed had vacancy decontrol not been in effect. The third ordinance does not contain any provision requiring landlords to refund excess rentals collected prior to its effective date. At no time has the ordinance been interpreted by the Council to require a landlord to make such refunds to his tenants.

During the interim between March 12, 1982, the purportedly effective date of the second ordinance, and October 14, 1982, the date the third ordinance was adopted, certain tenants of South Hamilton voluntarily vacated their apartment units. Because of the invalidity of the second ordinance, and consistent with the terms of the first ordinance, the units vacated during this time were relet to new tenants at the higher rents permitted under the first ordinance, the vacancy decontrol ordinance. The Town contended that under the third ordinance, South Hamilton had to roll back the rent of these apartments prospectively to the level that would have been allowed if the second ordinance had been in effect.

South Hamilton objected and commenced this action seeking, in part, a declaration that the retroactive provisions of the third ordinance were null and void. On cross motions for summary judgment, the trial court dismissed South Hamilton's complaint but ordered that the defendants should not seek a refund of rents collected prior to the effective date of the third ordinance. The Appellate Division reversed the trial court, and held the retroactive provisions of the third ordinance to be invalid and of no force and effect. The Appellate Division held "there is no visible 'rational public purpose' for the retroactive provisions of Ordinance 0–25–82 ...," and further noted that "[i]t takes more than an abortive attempt to enact an ordinance to warrant retroactivity so as to impair the obligation of contracts legally consummated." Judge Brody dissented because he believed the rollback feature had a rational public purpose, namely, to allow the Council to correct its own mistake, by achieving the result it thought it had achieved under the second ordinance. The dissenting judge noted that "it is clear from objective evidence

that the fourth affirmative vote in March would have been cast but for a bona fide misunderstanding of the law."

## II

Generally, legislation operates prospectively, unless by its terms the legislation clearly manifests that it is to be applied retroactively. *Skulski v. Nolan,* 68 *N.J.* 179 (1975); *Rothman v. Rothman,* 65 *N.J.* 219 (1974); *Helmsley-Spear, Inc. v. Fort Lee Rent Leveling Board,* 171 *N.J.Super.* 254, 259 (App.Div:1979). However, if the enactment of retroactive municipal legislation is not constitutionally prohibited (*see, e.g., Denver v. Denver Buick, Inc.,* 141 *Colo.* 121, 347 *P.*2d 919 (1960) (retroactive municipal ordinance deprived person of property without due process)), there is no rule against retroactive municipal legislation unless it interferes with contract or vested rights. 6 *E. McQuillan, Municipal Corporations,* (3rd Ed.) § 20.70, page 174; *Richardson v. Scignlinsky,* 9 *N.J.Misc.* 370, 154 *A.* 541 (1932).

It is well-established that legislation that has as its rational public purpose the necessary protection of the health, safety, and welfare of the public, and is within the police power of the state or its subdivisions, may be applied retroactively to alter or abrogate existing contractual rights without affecting its validity under the contract clause of the United States or New Jersey Constitutions. *Albigese v. City of Jersey City,* 127 *N.J.Super.* 101, 112–13 (Law Div.1974) (citing *City of El Paso v. Simmons,* 379 *U.S.* 497, 508, 85 *S.Ct.* 577, 583, 13 *L.Ed.*2d 446 (1965); *Veix v. Sixth Ward B. & L. Ass'n,* 310 *U.S.* 32, 38–40, 60 *S.Ct.* 792, 794–96, 84 *L.Ed.* 1061 (1940); *Home B. & L. Ass'n v. Blaisdell,* 290 *U.S.* 398, 428, 54 *S.Ct.* 231, 236, 78 *L.Ed.* 413 (1934); *Brookchester v. Ligham,* 17 *N.J.* 460, 467 (1955)).

The constitutional interdiction against impairment of contracts is not an absolute one. *City of El Paso v. Simmons, supra,* 379 *U.S.* at 508, 85 *S.Ct.* 577 [at 583]; *N.J. Sports & Exposition Auth. v. McCrane,* 119 *N.J.Super.* 457, 563 (Law Div.1971), mod. 61 *N.J.* 1 (1972). Every contract is made subject to the

condition that its fulfillment may be frustrated by a proper exercise of the police power. *Veix v. Seneca B. & L. Ass'n*, 126 *N.J.L.* 314, 320 (E. & A.1941); *American Budget Corp. v. Furman*, 67 *N.J.Super.* 134, 144 (Ch.Div.1961), aff'd 36 *N.J.* 129 (1961). [*Albigese, supra*, 127 *N.J.Super.* at 113.]

The only caveat to this overriding police power is that the legislation must be reasonable in its effort to achieve the intended purpose and that it shall not constitute an arbitrary exercise of power. *Brookchester, supra*, 17 *N.J.* at 466; *National City Bank v. Del Sordo*, 16 *N.J.* 530, 542 (1954); *Jamouneau v. Harner*, 16 *N.J.* 500, 514 (1954), *cert.* den., 349 *U.S.* 904, 75 *S.Ct.* 580, 99 *L.Ed.* 1241 (1955); *Monmouth Lumber Co. v. Ocean Tp.*, 9 *N.J.* 64, 71 (1952); *Albigese, supra*, 127 *N.J.Super.* at 113.

New Jersey courts specifically have addressed the issue of whether a rent control ordinance may be applied retroactively. The courts have held that to sustain the retroactive application of a rent control ordinance that interferes with existing contract rights, the legislation must have a strong rational public purpose. The cases have cited as a sufficient rational public purpose the existence of some housing emergency or exorbitant rental increases that created hardship on tenants and adversely affected the health, safety, and general welfare of the citizens. *Helmsley-Spear, Inc., supra*, 171 *N.J.Super.* 254; *Woodcliff Management v. Township of North Bergen*, 127 *N.J.Super.* 123 (Law Div.1974); *Albigese, supra*, 127 *N.J.Super.* 101.

In *Albigese, supra*, the subject ordinance provided for a rollback of rents to the levels in existence on January 11, 1973, although the ordinance was adopted on February 20, 1973. The ordinance invalidated any rental provisions contained in any agreements entered into after January 11, 1973. The purpose of the ordinance was to create a continuity of control on rent, which control had existed on the federal level prior to January 11, 1973. *Albigese, supra*, 127 *N.J.Super.* at 112. The plaintiff in *Albigese*, the owner of several apartment buildings, attacked the retroactive provision on the ground that it impaired the obligation of contracts entered into between plaintiff and ten-

ants between the base date of January 11, 1973 and the effective date of the ordinance, in violation of *U.S. Const.*, art. I, § 10, and *N.J. Const.* (1947), art. IV, § VII, para. 3.

Having first found that a housing emergency existed in Jersey City, which amply supported the exercise of the police power by the municipality in enacting rent control, the court then turned to the retroactive provisions of the ordinance and held that they were warranted because they were

> intended to fill the void which was created by the termination of federal rent controls. It serves the fair and legitimate purpose of equal treatment of landlords and tenants by eliminating the unfair advantage gained by those owners who moved quickly to increase rents the moment that federal regulations were lifted. Such owners undoubtedly acted in anticipation of impending state or local legislation. In this area, celerity should not be rewarded. [*Albigese, supra*, 127 *N.J.Super.* at 114.]

Accordingly, the court held that under the circumstances, the retroactive provision had a rational public purpose—"[i]ts tie-in to the point of time of elimination of federal controls constitutes a reasonable exercise of police power uninhibited by the cited constitutional provisions." *Id.*

In *Woodcliff Management, supra*, 127 *N.J.Super.* 123, the ordinance under consideration was substantially similar to the ordinance under attack in *Albigese, supra*, 127 *N.J.Super.* 101. Although the *Woodcliff* court affirmed the legitimacy of rent rollbacks to January 11, 1973, the date marking the end of federal controls, the court held that the portion of the ordinance requiring a refund by landlords of the excess rentals paid by tenants before the effective date of the ordinance was void. *Woodcliff, supra*, 127 *N.J.Super.* at 127. The court held that rents already paid constituted a vested right and the provision requiring their refund was therefore void. *Id.* at 126. The court distinguished vested rights from contract rights that are only executory in nature, such as the landlord's right to rent due in the future under the terms of a lease.

■ In this case, the Council required a rollback of rent but did not require the landlord to refund any excess rent to the

tenants. Nevertheless, the *Woodcliff* distinction between vested and executory rights does not diminish the protection afforded contract rights from a municipality's interference. Executory contract rights, although they do not have the sanctity of vested rights, are protected against the unfettered discretion of a municipality. The need for rent control alone is not sufficient to justify a retroactive application.

> The right of a municipality, however, to roll back rents and thereby curtail a personal constitutional protection (U.S. Const., Amend. V; N.J. Const. (1947), Art. I, par. 1) of all those adversely affected is not without its limitations.
>
>     *       *       *       *       *       *       *       *
>
> The perceived need for rent control does not in itself exhibit a similar need for retroactive operation of the enabling legislation. [*Helmsley-Spear, supra,* 171 *N.J.Super.* at 258–59.]

Thus, a rational public purpose is necessary to sustain the retroactive application of the third ordinance to March 12, 1982, the date the failed second ordinance was to have become effective.

<h2 style="text-align:center">III</h2>

■ We agree with the majority of the Appellate Division that no rational public purpose exists sufficient to support the retroactive provisions of the third ordinance when such retroactivity results in the impairment of contract rights. The claimed justification for the retroactive application of the third ordinance is to allow the Council to correct its mistake by ratifying the action it thought it had taken six months earlier. In this regard, the Council argues and the dissent below agrees that the second ordinance, which was to repeal vacancy decontrol, failed solely because of the absence of Councilman Barber from the meeting at which the final vote was taken. Their argument is as follows: Barber's opposition to vacancy decontrol is documented by his vote against the first ordinance, his vote in favor of the second ordinance on its first reading, and his statement at the time of the vote on the third ordinance that he would have voted for the second ordinance had he been present at the March 25, 1982 Council meeting. Ergo, it is clear that

the fourth affirmative vote would have been cast in March for the second ordinance. Thus, the retroactivity of the third ordinance serves a rational public purpose by allowing the Council to correct its mistake as to the number of votes necessary to pass an ordinance.

The Appellate Division rejected this reasoning and concluded that the record is devoid of any evidence revealing a sufficient rational public purpose for the Council's interference with leases entered into by South Hamilton and new tenants during the time between March 12, 1982 and October 14, 1982. The Appellate Division held, "[i]t takes more than an abortive attempt to enact an ordinance to warrant retroactivity so as to impair the obligation of contracts legally consummated." According to the Appellate Division, any attempt to link what the Council did on October 14, 1982 and what it intended to do on March 25th of that year "is sheer speculation totally lacking in support in the record. There is no way of knowing how council members who were absent on March 25th would have voted on March 25th other than the hearsay statement of one elected official [Councilman Barber] as to how he would have voted had he been present six months earlier."

Nor can the ordinance's retroactivity be justified as a means to correct a procedural defect. The Council and the dissenter in the Appellate Division argue that the failure to pass properly the second ordinance was nothing more than a procedural defect that the Council should be able to correct retroactively by its third ordinance. In support of this argument, the Council relies on *Inganamort v. Fort Lee*, 131 *N.J.Super.* 558 (Ch.Div. 1974), rev'd in part, 72 *N.J.* 412 (1977). In that case the court held invalid Fort Lee's attempt to achieve by resolution what was required to be done by ordinance. In finding that the resolution was invalid and that therefore no rent control was in effect, the court, in dictum, suggested that an ordinance be adopted to correct the error by establishing a rent base period at a time when valid controls did exist. *Id.* at 570.

Reliance on *Inganamort* is misplaced. The passage of a resolution, rather than an ordinance, can more aptly be characterized as a procedural mistake than can the events that occurred here. The failure to have enough votes to pass an ordinance can hardly be termed "procedural." Indeed, as evidenced by the record, not only were two Council members absent for the final vote on the second ordinance, but two of those who had been present changed their votes on the repealer amendment when they voted in October, 1982. (Councilman Denman changed his vote from "no" to "yes;" Councilman Kauffman changed his abstention to "yes."). These changes demonstrate the impossibility of speculating on Council members' votes. To uphold the retroactive application of an ordinance based on such speculation would create havoc in municipal government.

We agree with the Appellate Division's opinion that the Council's desire to correct its mistake is not a rational public purpose sufficient to sustain the retroactivity of the third ordinance when such retroactivity results in the impairment of contract rights. Moreover, there is no other rational public purpose sufficient to justify the retroactive application of the third ordinance. Retroactive rent control provisions have been sustained in New Jersey under only the most stringent circumstances. In *Albigese* and *Woodcliff* retroactive rollbacks were upheld because of the prior expiration of federal controls and the gap that existed between their expiration and the implementation of municipal controls. During that gap landlords had taken advantage of the lack of control, to the detriment of their tenants. *Albigese, supra,* 127 *N.J.Super.* at 114; *Woodcliff, supra,* 127 *N.J.Super.* 123. In this case, no such gap exists that can justify the retroactive rollback. Neither the second nor third ordinance was intended to fill a gap such as that which existed in *Albigese* and *Woodcliff* between the termination of federal controls and the inception of municipal controls. Federal controls were not in existence prior to the vote on the second ordinance. Nor was local rent control the status

quo prior to that vote; vacancy decontrol under the first ordinance had been in effect since November, 1981.

Furthermore, no sweeping, illegal or inappropriate action that had to be corrected by the retroactive rollback was taken by landlords against tenants during the period in which vacancy decontrol was in effect. The *Albigese* court sustained the retroactive rollback in that case in part because of the "unfair advantage gained by those owners who moved quickly to increase rents the moment that federal regulations were lifted." *Albigese, supra,* 127 *N.J.Super.* at 114. Here, the vacancy decontrol ordinance allowed an increase in rent only upon the voluntary vacation of an apartment by a tenant. No across-the-board increase was made. Under the Morristown ordinance, vacancy decontrol was not automatic. A landlord was entitled to decontrol the rent on a vacated apartment only if the landlord first applied for and received the approval of the Division of Rent Leveling. The ordinance set forth limited circumstances under which decontrol of an apartment would be approved. The ordinance stated that

> [w]hen a landlord seeks to decontrol an apartment under this Section, the landlord shall file a certificate, provided by the Division of Rent Leveling indicating the name of the vacating tenant, existing rental, the circumstances under which the tenant vacated the apartment unit, the name of the new tenant, the new rental and the proposed effective date of the new rental.

Hence, administrative discretion would exist to deter the kind of gouging that the *Albigese* and *Woodcliff* courts faced. There is nothing in the record to suggest that tenants were forced out of their apartments or had been improperly compelled to execute new leases with increased rents.[5]

Nor can the landlords be accused of acting in anticipation of any pending or intended enactment. The political volatility of the rent control issue in Morristown belies the notion that any actions taken by landlords in Morristown could possibly have

---

[5]In oral argument before the Appellate Division the attorneys had knowledge of only two incidents in which the rent of an apartment upon voluntary vacation was increased to the level of market rent rather than controlled rent.

been in anticipation of a reenactment of rent control. No one could have guessed the outcome of the controversy. The absence of an impropriety by South Hamilton reinforces the lack of a sufficient rational public purpose to sustain the retroactive provisions of the ordinance, when such retroactivity results in the impairment of contract rights.

## IV

■ In *Helmsley-Spear, supra,* 171 *N.J.Super.* 254, the court invalidated the attempted retroactive application of a 1972 rent leveling ordinance.

> The record in this case is devoid of any evidence that it was necessary to interfere with leases or the rents to be paid under them when made at a time far in advance of the rent controlling enactment. The parties in the instant case agree that the 1971 lease was entered into in the normal course of business and not in anticipation of any pending or intended enactment. There is not the slightest indication that at the time of the making of the lease the parties did not deal at arm's length or that the lease as made was unconscionable. [*Id.* at 259.]

Similarly, we uphold the leases entered into by South Hamilton during the period in which vacancy decontrol was in effect, and invalidate the retroactive application of the third ordinance.

Given the absence of any rational public purpose for the retroactive provisions of the third ordinance, there is no basis upon which those provisions can be sustained. As indicated above, a municipality's police power can be invoked to impair the obligation of contracts only if there is a rational public purpose to justify such an exercise of power. See *supra* at 444–445. Here, there was neither a gap in rent control that was sought to be filled, nor abuse by Morristown landlords that was sought to be corrected, nor any other circumstances that could justify the retroactive provisions of the ordinance. The retroactivity was designed merely to permit the Council to correct its own mistake. These circumstances do not constitute a rational public purpose sufficient to permit the Town to apply a rent control ordinance retroactively and thereby impair contractual rights.

452

Accordingly, we affirm the judgment of the Appellate Division.

*For affirmance* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal* —None.