RYWA WINDMAN, PLAINTIFF-RESPONDENT, AND DAVANNE REALTY CO., PLAINTIFF, v. CITY OF ENGLEWOOD AND ENGLEWOOD RENT CONTROL BOARD, DEFENDANTS-AP-PELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 18, 1985—Decided April 10, 1985.

Before Judges MORTON I. GREENBERG, O'BRIEN and GAYNOR.

*William F. Rupp* argued the cause for appellants (*Rupp & Ten Hoeve,* attorneys).

*Steven R. Irwin* argued the cause for respondent (*Mandelbaum & Mandelbaum,* attorneys).

The opinion of the court was delivered by

MORTON I. GREENBERG, P.J.A.D.

This matter comes on before this court on appeal by defendants City of Englewood in Bergen County and Englewood Rent Board[1] (board) from a judgment of the trial court declaring rollback provisions of a rent control ordinance invalid. The judgment was entered in accordance with an opinion of the trial judge which held that an amendment to the Englewood rent control ordinance could not require that rents previously fixed pursuant to the ordinance be reduced for payments due after the effective date of the amendment. The trial court considered that the amendment unconstitutionally impaired the obligation of contract under the leases. We disagree and reverse.

There has been a long history of intensive rent control in Englewood. The first rent control ordinance, Ordinance No. 1924, was adopted in 1972 in response to what the city council, Englewood's governing body, considered to be a housing shortage leading to burdensome rental increases not necessarily related to the value of the property, the cost of providing services or inflationary trends. Ordinance No. 1924 limited rental increases to the percentage of increase in the consumer price index (CPI). A companion enactment, Ordinance No. 1922, provided for establishment of a Landlord-Tenant Relations Board to administer the ordinance, a function now performed by the board. However in view of the then uncertainty as to the power of a municipality to enact a rent control ordinance, Ordinance No. 1924 was not to be effective until the Supreme Court of New Jersey determined that a municipality was authorized to adopt a rent control ordinance or until 20 days after the enactment of state enabling

[1]The board was erroneously called Englewood Rent Control Board in the pleadings.

legislation allowing such ordinances. Following the Supreme Court decision in *Inganamort v. Bor. of Fort Lee*, 62 *N.J.* 521 (1973), upholding rent control as a valid exercise of municipal police power, the council enacted Ordinance No. 1999 activating Ordinance No. 1924. Then in May 1973, the council adopted Ordinance No. 2004 providing that the limitations on increases in Ordinance No. 1924 would apply to increases effective on or after January 12, 1973, unless a notice increasing rents was served on the tenant before January 12 in accordance with the federal rent control regulations in force before that date.

In 1974 the council adopted Ordinance No. 2075 amending Ordinance No. 1924 by reducing the allowable increase to the lesser of one-half of the percentage of increase in the CPI or 5% of the rent under an expiring lease. This amendment was passed because council perceived that excessive increases were allowed under Ordinance No. 1924. In 1978 Ordinance No. 1924 was repealed and replaced with Ordinance No. 2301 limiting increases to 5.5% of the base rent but making increases contingent upon proper maintenance of the property by the landlord. Ordinance No. 2301 required landlords to give tenants at least 30 days' notice before increasing rent and further provided that when the notice was given a landlord was required to file with the Landlord-Tenants Relations Board a statement by Englewood's Chief Inspector, dated within the 30 days immediately before filing, stating that the rental premises had no outstanding notice of violation under any applicable law pertaining to the occupancy or maintenance of the rental premises.

Ordinance No. 2301 was amended in 1980 by Ordinance No. 80–16 allowing rental increases of 7% if the landlord supplied heating for the tenant and 5.5% if not. In 1982 a further amendment allowed for an adjustment of rents based on a percentage of the increase or decrease in the city's real property tax rate.

By 1983 the council had apparently concluded that the rent increases then allowed might have become excessive and consequently it requested the board to review the increases permit-

ted.  The board held a public hearing on the issue on August 31, 1983.  It subsequently recommended that the council eliminate the tax adjustment and the differential in increases permissible based on the allocation of heat expenses.  The board recommended that the city instead use a weighted formula reflecting various adjustment factors.

The council acted positively toward these suggestions.  In November 1983 it adopted Ordinance No. 83–42 amending Ordinance No. 2301 as then codified in Englewood's revised general ordinances.  The annual rental increases were limited by the amendment to 4% of the base rent, defined as the rent immediately prior to July 1983.  Ordinance No. 83–42 became effective on November 17, 1983 and applied "to any rent increase to become effective on or after July 1, 1983."  The amendment, however, did not indicate whether landlords could retain rents collected before its effective date.

At the time of the adoption of the ordinance council caused a statement to be read into its minutes explaining why the maximum allowable increase was reduced to 4%.  Prior to the amendment a landlord supplying heat could obtain a 7% increase plus a tax adjustment which through August 31, 1983 allowed a net increase in rent of 8.94%.  After that date a landlord could obtain a net increase of 8.36%.  But the increase in the CPI had fallen to about 4%, a figure which council believed reflected increases in the expenses that a landlord would have such as for utilities, maintenance and insurance.  The statement pointed out that if rents had been increased on or after July 1, 1983 by more than 4% a landlord would be required to reduce the increase to that figure.  However if rents were increased before July 1, 1983 they did not have to be reduced.

Council also prepared a statement explaining the amendment for distribution to landlords and tenants.  This statement indicated that notwithstanding the 4% limitation in the new ordinance, no landlord was required by its terms to refund any rent collected before its adoption.

The adoption of Ordinance No. 83–42 triggered this action. Plaintiffs filed this complaint seeking to invalidate Ordinance No. 83–42 in its entirety or invalidating the rollback provisions. Plaintiff Davanne Realty Co. asserted that it owned property in Wyckoff, another Bergen County municipality. Davanne considered that the Englewood rent control ordinance diminished the taxable value of property in Englewood and thus unconstitutionally shifted a portion of the cost of county government to Wyckoff taxpayers. Plaintiff Rywa Windman, owner of a rental apartment property in Englewood subject to the rent control ordinance, challenged the application of the rollback provisions of Ordinance No. 83–42 to rental agreements entered into before its effective date. She also contended that the explanatory statement distributed to landlords and tenants was invalid as being beyond the parameters of the ordinance. She further asserted that if the explanatory statement correctly construed the ordinance, then the ordinance itself was unconstitutional as violative of the contract clause of the federal constitution and the due process clauses of the federal and New Jersey constitutions.

The trial judge decided the case on a record consisting of the pleadings, affidavits, exhibits and briefs without oral testimony. In a written opinion dated April 10, 1984 the judge found that the explanatory statement correctly construed the ordinance, a finding seemingly not challenged on this appeal and in any event clearly correct. *See Woodcliff Management v. Tp. of North Bergen*, 127 *N.J.Super.* 123 (Law Div.1974). The judge further found, however, that application of the amendment to agreements entered into before its effective date substantially impaired obligations under contracts entered into between landlords and tenants from July 1 until November 17, 1983. The judge signed a judgment on May 11, 1984 reflecting the opinion. Davanne's count concerning the shifting of taxes to taxpayers in other municipalities was withdrawn and thus that portion of the complaint was dismissed without prejudice. The judgment included specific provisions upholding increases sought by Windman between July 1, 1983 and November 17, 1983. The

court, however, did not invalidate the amendment with respect to its limitation of increases after its effective date. Defendants have appealed from the judgment.

■■ There are several basic principles which we must initially consider in deciding this appeal. Municipal ordinances are presumptively valid and thus a party seeking invalidation of an ordinance has the burden to establish its invalidity. *Quick Chek Food Stores v. Springfield Tp.*, 83 *N.J.* 438, 447 (1980); *Hudson Circle Servicenter, Inc. v. Kearny*, 70 *N.J.* 289, 298 (1976). Further the municipal police power includes authority to adopt a rent control ordinance. *See N.J.S.A.* 40:48–2; *Hutton Pk. Gardens v. West Orange Town Council*, 68 *N.J.* 543 (1975); *Inganamort v. Bor. of Fort Lee, supra*, 62 *N.J.* at 521. Thus we start our inquiry by recognizing that Ordinance No. 83–42 is presumptively valid.

■ Nevertheless Englewood's general powers are limited by restrictions against impairing the obligation of contracts. *U.S. Const.*, Art. I, § 10; *N.J. Const.* (1947), Art. IV, § VII, par. 3.[2] The scope of these limitations, however, cannot be determined with literal exactness like a mathematical formula. *Home Bldg. & Loan Asso. v. Blaisdell*, 290 *U.S.* 398, 428, 54 *S.Ct.* 231, 236, 78 *L.Ed.* 413, 423 (1934). Thus a law appropriately designed to serve an urgent public interest may be valid even when it does impair contractual obligations. *Home Bldg. & Loan Asso. v. Blaisdell, supra*, 290 *U.S.* at 443–449, 54 *S.Ct.* at 242–244, 78 *L.Ed.* at 432–434.

■■ A court in determining whether an exercise of the police power violates the contract clause must consider whether there has been a "substantial impairment" of a contractual relationship. *Energy Reserves v. Kansas Power & Light*, 459 *U.S.* 400, 411, 103 *S.Ct.* 697, 704, 74 *L.Ed.*2d 569, 580–581 (1983). Clearly the more substantial the impairment, the more

---

[2]We deal in this case with a situation in which the municipality seeks to regulate contracts between other persons and entities. We are not concerned with a situation in which a litigant invokes the impairment clauses to preclude a public entity from relieving itself of its own obligations. *See United States Trust Co. v. New Jersey*, 431 *U.S.* 1, 97 *S.Ct.* 1505, 52 *L.Ed.*2d 92 (1977).

closely the challenged law must be scrutinized and in cases of substantial impairment the court must consider whether the law has a "significant and legitimate public purpose." *Ibid.* Where a legitimate public purpose for the law is established the court determines whether the law was appropriately designed to serve that purpose. If so the court should ordinarily defer to the legislative judgment regarding its necessity and reasonableness. *Ibid. See also Amer. Trial Lawyers Assoc. v. N.J. Supreme Ct.,* 126 *N.J.Super.* 577, 593 (App.Div. 1974), aff'd 66 *N.J.* 258 (1974).

In view of the foregoing principles it is not surprising that rollback provisions in a rent control ordinance have been sustained against a challenge predicated on the impairment clause. *See Albigese v. City of Jersey City,* 127 *N.J.Super.* 101 (Law Div.1974), mod. and aff'd 129 *N.J.Super.* 567 (App.Div.1974). *Albigese* was concerned with a Jersey City rent control ordinance effective as of March 12, 1973, and providing for a rollback of rents to the levels existing on January 11, 1973, the date when federal rent controls expired. The court there held that the retroactive application of the ordinance was reasonable for when federal rent controls were terminated some landlords had quickly moved to increase rents before state or local controls were imposed. 127 *N.J.Super.* at 114. Thus the retroactive application of the ordinance served the fair and legitimate purpose of promoting equal treatment of landlords and tenants by eliminating the unfair advantage gained by landlords who moved quickly to increase rents when federal controls were lifted.

█ The trial judge distinguished *Albigese* on the factually accurate basis that there was no void in rent controls in Englewood between July 1, 1983 and November 17, 1983 and thus any increase in rent during that period was permitted by the rent control ordinance. In *Albigese* the rent was increased during a period of no controls. Consequently the judge considered that Ordinance No. 83–42 unjustifiably impaired any contract between a landlord and tenant whose rent was increased more than 4% after July 1, 1983 but before its effective date.

We draw an opposite conclusion from that reached by the trial judge based on the factual distinction between *Albigese* and this case. Firstly we think that the history of uninterrupted continuous local regulation in Englewood works in favor of sustaining Ordinance No. 83–42, for a person being regulated may more reasonably expect retroactive application of regulations than one unregulated. *See Energy Reserves v. Kansas Power & Light, supra,* 459 *U.S.* at 411, 103 *S.Ct.* at 704, 74 *L.Ed.*2d at 580–581. Secondly the potential impact of the amendment is less in Englewood than it was in Jersey City from the ordinance upheld in *Albigese.* In Jersey City the parties were free during the period of the gap in controls to enter into a lease without regard for any rent control. Here the parties before November 17, 1983 were limited by the rent control ordinance prior to its amendment by Ordinance No. 83–42. Thus while it is true that the need for retroactive application of the ordinance in Englewood was probably less than that in Jersey City the negative impact on the landlord is more limited. Thirdly the reason for the gap between July 1, 1983 and November 17, 1983 was that the council was seeking to obtain the best advice with respect to the amendment in a field in which it had already acted. In Jersey City there was a gap in controls because the municipality had not previously regulated rents at all.

In fact Ordinance No. 83–42 is completely rational and as being within the standards announced in the United States Supreme Court cases already cited should be sustained. The rent control ordinance prior to the adoption of Ordinance No. 83–42 allowed rent increases of 7% where the landlord supplied heat and 5.5% elsewhere and in addition permitted adjustments for tax increases. The record indicates that through August 31, 1983 increases of as much as 8.94% could have been obtained and thereafter increases of as much as 8.36% were allowable. These increases significantly exceeded the rise in the CPI and, in the findings of the council, the increase in the expenses of a landlord. Thus a significant and legitimate public interest was advanced by the ordinance. Further the impairment was limited for the landlords were permitted some

increase in rent. Additionally the regulation was in a field already intensely regulated. Consequently we should uphold the ordinance. *See Hutton Pk. Gardens v. West Orange Town Council, supra,* 68 *N.J.* at 565.

We think it paradoxical that even though Windman complains that Ordinance No. 83–42 is unconstitutional, landlords in Englewood could have been benefited by a delay in its enactment. Englewood has conceded that no landlord need refund rents lawfully collected before November 17, 1983 even though they exceeded the 4% limitation. It thus has complied with the rule in *Woodcliff Management v. Tp. of North Bergen, supra,* 127 *N.J.Super.* at 123 precluding the adoption of an ordinance requiring the refund of lawfully collected rents. There is no doubt that if Ordinance No. 83–42 had been adopted before July 1, 1983 it could have been prospectively applied after that date. Accordingly the delay in its adoption permitted landlords in Englewood to charge and retain higher rents than would have otherwise been lawful for a period of several months.

Finally we note that courts in other states have upheld rollback regulations regulating future rental payments under agreements existing before the effective date of rent control laws against challenges under the impairment clause. *Huard v. Forest Street Housing, Inc.,* 366 *Mass.* 203, 316 *N.E.*2d 505 (Sup.Ct.1974); *Twentieth Century Assoc. v. Waldman,* 294 *N.Y.* 571, 63 *N.E.*2d 177 (Ct.App.1945), app. dism. 326 *U.S.* 696, 697, 66 *S.Ct.* 492, 493, 90 *L.Ed.* 410 (1946). These cases involved rent control acts which only applied to future payments and did not require refunds of rents collected.

Windman relies on *Helmsley-Spear, Inc. v. Fort Lee Rent Leveling Bd.,* 171 *N.J.Super.* 254 (App.Div.1979), which held that a rent control ordinance was not applicable to rent payable after the effective date of the ordinance under leases preexisting the ordinance. But that case is distinguishable because the ordinance involved there did not clearly indicate it applied to leases outstanding when it was adopted. On the other hand Ordinance No. 83–42 by its terms was to apply to any increase effective on or after July 1, 1983. Further in *Helmsley-Spear*

we stated it could not be seriously argued that under appropriate circumstances an ordinance could not roll back rent under leases preexisting the ordinance. *Id.* at 258.

Finally we note that the complaint charges that Ordinance No. 83–42 denies due process of law. This issue seems not to be specifically advanced on this appeal but in any event is not meritorious. Windman has the burden to establish that the ordinance denies her due process of law. *Hutton Pk. Gardens v. West Orange Town Council, supra,* 68 *N.J.* at 565. She has not met that burden. An ordinance will not deny due process of law if the legislative purpose and the means employed to reach it are constitutionally permissible. Thus the ordinance must bear a rational relationship to a constitutionally permissible objective. *See U.S.A. Chamber of Commerce v. State,* 89 *N.J.* 131, 155 (1982). For the reasons already set forth Ordinance No. 83–42 passes this test.

The trial court upheld increases sought by Windman between July 1, 1983 and November 17, 1983, a result which defendants question. In view of our result we will not decide the validity of any attempt to increase rent for any particular tenant. The individual tenants are not parties to this case and in the event that there are disputes between Windman and them there appear to be administrative procedures for their determination. Further after oral argument we were satisfied that the record does not clearly show what the increases were.

The judgment of May 11, 1984 insofar as it upholds the specific increases is vacated. It is otherwise reversed and the complaint is dismissed.