*Supp. 3 Opinion
SOVEN, J.
Plaintiff Marianne Berman appeals from a judgment in an unlawful detainer action in favor of defendant tenants Carolyn Downing and Patrick Tracy. We affirm.
Facts
Plaintiff owns a building located in West Hollywood. On November 28, 1984, plaintiff and defendants entered into a one-year written lease for an apartment in plaintiff’s building, the tenancy to commence on November 28, 1984, at a monthly rental of $700. On November 29, the City of West Hollywood enacted an ordinance establishing a moratorium regulating rents and evictions. The ordinance by its terms expired May 1,1985, and provided, as relevant, for a rent rollback which limited landlords, starting November 29, to the rent in effect on August 6, 1984.
The West Hollywood City Council found that there existed a “critical shortage of rental housing” in West Hollywood, that before the formation of the City of West Hollywood, rents for some but not all housing within the City were controlled by a Los Angeles County ordinance which would soon expire, that a comprehensive rent regulation ordinance was needed for the city and that “if a temporary moratorium is not now imposed, substantial rent increases are likely to occur,” which would defeat the intent and purpose of the proposed ordinance. The moratorium ordinance was declared to be necessary to “protect the public peace, health, safety and welfare . . . .”
Before the enactment of the West Hollywood ordinance, a Los Angeles County ordinance, first enacted in 1979, governed rental housing in West Hollywood.
Discussion
Plaintiff contends that the West Hollywood ordinance is unconstitutional in that the rent rollback provisions impair contractual obligations in violation of the United States and California Constitutions, and are an arbitrary and unreasonable exercise of the police power. Plaintiff’s contentions are without merit on this record.
*Supp. 4 We hold, on this record consisting of a stipulation of facts and the language of the West Hollywood Moratorium Ordinance,[1] that the rent rollback provisions of that ordinance are constitutional.
We agree with plaintiff that “the constitutionality of residential rent controls under the police power depends upon the actual existence of a housing shortage and its concomitant ill effects of sufficient seriousness to make rent control a rational curative measure.” (Birkenfeld. v. City of Berkeley (1976) 17 Cal.3d 129, 160 [130 Cal.Rptr. 465, 550 P.2d 1001].) Equally important, however, “the existence of ‘constitutional facts’ upon which the validity of an enactment depends [citation] is presumed in the absence of any showing to the contrary [citation] . . . .” (Ibid.) Plaintiff was entitled to show the nonexistence of those facts as to the West Hollywood ordinance but failed to do so.
At oral argument, plaintiff relied on the “constitutional facts” supporting the validity of the county rent control ordinance, and argued that because the county ordinance was presumed constitutional, the West Hollywood ordinance, based on different “constitutional facts,” was necessarily unconstitutional. The county ordinance is not, however, before us. Besides, the theory that there is only one correct legislative solution to a problem defies common sense and law. (E.g., Williamson v. Lee Optical Co. (1955) 348 U.S. 483, 488 [99 L.Ed. 563, 572, 75 S.Ct. 79].)
The true thrust of plaintiff’s contention appears to be that the rollback provisions of the West Hollywood moratorium ordinance are facially void. We disagree.
In Birkenfeld v. City of Berkeley, supra, 17 Cal.3d 129, 159-160, our Supreme Court held that municipal rent control legislation is generally a proper exercise of the police power. Whether a specific rent control ordinance reflects a proper exercise of the police power depends, as noted, upon whether a housing shortage is sufficiently serious to make rent control a rational curative measure. (Birkenfeld v. City of Berkeley, supra, 17 Cal.3d 129, 160.) The West Hollywood City Council declared that a “critical shortage of rental housing” existed in West Hollywood. We are required to rely on that declaration.
*Supp. 5 Plaintiff’s contention that the rent rollback[2] provisions of the ordinance violate the contract clause is without merit. No case has held or suggested that rent rollback provisions are per se unconstitutional. Birkenfeld noted that the “mere fact that a city rent control measure would nullify tenants’ liabilities to landlords for rent in excess of stated ceiling does not render the measure invalid” (17 Cal.3d at p. 143), and that rent control enactments “typically use the rent charged on a prior date as a starting point for the fixing of maximum rents. ...” (Id., at p. 166.) Thus, Birkenfeld recognized as inevitable that some contractual obligations would be affected. Moreover, rent rollbacks have been held constitutional in other jurisdictions. (Windman v. City of Englewood (N.J.Super. 1985) 491 A.2d 32, 37; Chelmsford Trailer Park v. Town of Chelmsford (Mass. 1984) 469 N.E.2d 1259, 1266; Twentieth Century Associates v. Waldman (N.Y. 1945) 63 N.E.2d 177, 179.)
Plaintiff, conceding that legislative bodies are entitled to restrict contractual rights without violating constitutional provisions against the impairment of contractual obligations (e.g., Home Building & Loan Asso. v. Blaisdell (1933) 290 U.S. 398, 447-448 [78 L.Ed. 413, 434, 54 S.Ct. 231, 88 A.L.R. 1481]) nonetheless asserts that the legislative body must demonstrate exigent circumstances to justify an impairment of contract obligations. Plaintiff overstates the requirements.[3]
The contract clause merely imposes “limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.” (Allied Structural Steel Co. v. Spannaus (1978) 438 U.S. 234, 242 [57 L.Ed.2d 727, 734, 98 S.Ct. 2716].) The prohibitions of the contract clause “must be accommodated to the inherent power of the State ‘to safeguard the vital interests of its people.’ ” (Energy Reserves Group v. Kansas Power & Light, supra, 459 U.S. 400, 410 [74 L.Ed.2d 569, 580].)
Moreover, a threshold inquiry is whether the legislative enactment has in fact operated as a substantial impairment of a contractual relationship. *Supp. 6 “Minimal alteration of contractual obligations may end the inquiry at its first stage.” (Allied Structural Steel Co. v. Spannaus, supra, 438 U.S. at pp. 244-245 [57 L.Ed.2d at pp. 736-737].) In determining the extent of impairment, a court must “consider whether the industry the complaining party has entered has been regulated in the past.” (Energy Reserves Group v. Kansas Power & Light, supra, 459 U.S. at p. 411 [74 L.Ed.2d at p. 580].)
Here, the city council declared a critical shortage of rental housing, the purpose of the moratorium ordinance was to permit the enactment of meaningful permanent legislation, the ordinance was of six months’ duration only, rents were fixed at a time less than four months preceding the date of the enactment, rent control benefited all renters within the community, and the business of rental housing had been government controlled for at least five years. No significant impairment of contractual rights appears on this record.
The judgment is affirmed. Respondents to recover costs on appeal.
Cooperman, P. J., and Reese, J., concurred.

Plaintiff asserts, for example, that the Los Angeles County Rent Control Ordinance had controlled any existing crisis and that “because the housing crisis in the West Hollywood area was already under control at the time the City became incorporated, the type emergency that qualifies to invoke police power did not exist. . . .” Without deciding whether plaintiff’s legal theory is correct, we have no facts to indicate the condition of the rental housing market before and during rent control under the county ordinance.

“Rollback” is a phrase of convenience and possibly deceptive. To roll back rents means that future rents are based on rents in existence on a prior date; rents paid are unaffected.

In early cases, whether an enactment violated the contract clause depended on five factors: that the legislative body had declared the existence of an emergency; that the law was enacted to protect a legitimate public interest; that the relief was appropriately tailored to meet the emergency it was designed to meet; that conditions imposed were reasonable; and that the legislation was limited to the duration of the emergency. (Home Building & Loan Asso. v. Blaisdell, supra, 290 U.S. 398, 434 [78 L.Ed. 413, 426].) However, the United States Supreme Court has concluded that the public purpose need not be “addressed to an emergency or temporary situation.” (Energy Reserves Group v. Kansas Power & Light (1983) 459 U.S. 400, 412 [74 L.Ed.2d 569, 581, 103 S.Ct. 697].)