JOHN V. MORAN, PROSECUTOR, v. LOUIS C. JOYCE, Jr., RESPONDENT.

Submitted October 1, 1940—Decided January 25, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the prosecutor, *John V. Moran, pro se.*

For the respondent, *Joseph Beck Tyler.*

The opinion of the court was delivered by

PARKER, J. The writ of *certiorari* brings up for review the record and judgment on a claim of property levied on under execution out of this court, after trial before the judge of the Common Pleas (*R. S.* 2:26-122 *et seq.*) and directed verdict in favor of the claimant.

As to the application to vacate the *allocatur,* little need be said. The legal questions involved are important, and the law applicable is not definitely settled by decision in this state. The writ was allowed by a justice of this court after a hearing on another phase of the litigation in which the questions now raised were quite fully brought to his knowledge. This court, at the May term, 1940, made the rule to show cause, and depositions and other evidence have been taken. We are clear, notwithstanding the claim that the judgment awarding the property to the claimant has been executed, that it is proper and advisable to proceed to a decision of the fundamental questions involved.

The facts of the case, shortly stated, are as follows: the prosecutor holds by assignment a judgment in this court of James V. Moran against Louis C. Joyce, Jr. Execution issued to Camden county and levy was made on two balances in a local bank, one in the name of "Louis C. Joyce, Jr., Trustee, settlement account," and the other in the name of "Louis C. Joyce, Jr., Agent." Such levies were made by virtue of .R. S. 2:26-170 which provides that "Rights and credits of a defendant in execution, or within his custody or control as a representative if he is sued in a representative capacity, may be levied upon, taken and sold or collected by virtue of such execution." Joyce as "Trustee" filed the statutory claim of property (R. S. 2:26-122) as to one of the bank balances and Joyce as "Agent" filed a similar claim for the other. The claims were tried in the manner provided by law, and Joyce testified in support of them. There was no counter evidence, and the judge directed verdicts for the respective "claimants." The general purport of the testimony was that both accounts consisted of money collected by Joyce belonging to corporations which, or individuals whom, he represented as agent, and that the accounts were earmarked as above in order to show on their face that he had no personal interest in them. No stenographic transcript of his testimony seems to have been made, we presume because in all probability no stenographer was present. What we have is a certificate by the Common Pleas judge purporting to give the substance of the testimony. There was cross-examination which does not seem to have broken down the testimony of Joyce in any way. Joyce had his check book and stubs, and used these in aid of his recollection. He had also a statement made up in his office but not by himself, which purported to show what clients or correspondents were interested in the balances, but this was objected to and excluded.

Three points are made for prosecutor, and we consider them in reverse order of presentation in the brief. The first is that the Court of Common Pleas (evidently meaning the judge of that court, see the language of the statute) has no jurisdiction to try a claim of property to rights and credits, because the statute does not speak of rights and credits, but

only of "goods and chattels." We think the claim is unsubstantial. By the act of 1915, chapter 115, now *R. S.* 2:26-170, rights and credits may be taken and sold, or collected under execution, and by *R. S.* 2:26-171, "Sales of rights and credits in the nature of personal property shall be made in the manner provided by law for judicial sales of chattels." The word "chattels" is of very broad import, and has been defined as including all kinds of property except the freehold and things which are parcel of it. 11 *C. J.* 383. It has been held to include negotiable instruments and mortgages. See *State* v. *Haight,* 35 *N. J. L.* 279, 282, where the thought is that ordinarily the context should be considered. In *Deakman* v. *Odd Fellows Hall Association,* 11 *N. J. Mis. R.* 646, we held that an execution against "goods and chattels" was sufficiently broad in language to support a levy on a bank balance. A reading of the Executions act as a whole indicates, in our opinion, a clear intent that with certain special provisions relating to the enforcement of a judgment against rights and credits, the general procedure, and particularly that touching disputes as to ownership of any property levied on, was to be applicable. We conclude, therefore, that jurisdiction to try the claim of property was lawfully vested in the Common Pleas judge, and was properly exercised.

The next point to consider is that first stated in the brief, viz., that the statute does not contemplate a claim of property by an agent as trustee for undisclosed third persons. Assuming for the present that this point has merit, we find nothing in the record to show that it was made at the trial. We do find, as has been said, that when Joyce produced a statement made by an employe, probably a bookkeeper, which would identify the ownership, it was objected, to by counsel for prosecutor and excluded. Of course it was incompetent as hearsay: but at least the details of ownership were proffered. Moreover, we think a specification of the names and interests of the *cestuis que trust,* clients, employes, or whatever they may be called, was not of the essence of the claim, but a factual detail relevant principally to the credibility of the testimony. The first point now under discussion reads in the brief: "The Court of Common Pleas" (we treat this as

referring to the judge) "is without jurisdiction to try a statutory claim of property made by the execution defendant himself purporting to be acting as agent or trustee for undisclosed third persons." We consider it not well taken. A "trustee" owner is the legal, as distinguished from equitable, owner, and property held by him as such legal owner is not liable for his personal debts. 17 *R. C. L.* 125; 26 *Id.* 1261, § 109; 65 *C. J.* 535; *Doxen* v. *Wagner,* 142 *Md.* 441; 121 *Atl. Rep.* 254, 256. "It is the duty of the trustee to defend and protect the title to the trust estate: and as the legal title is in him, he alone can sue and be sued in a court of law: the *cestui que trust,* the absolute owner of the property, is regarded in law as a stranger." 2 *Perry on Trusts* (*5th ed.*) 484, § 328; 65 *C. J.* 861, § 743, and *p.* 868, § 757. And in *Smith's Lessee* v. *McCann,* 24 *How.* 398, an ejectment suit at law, there was a deed to one Fenby "as trustee" for named parties who were not joined in the suit. The court noted that in the State of Maryland, where the action arose, the distinction between common law and equity was preserved, and (at *p.* 407), said that "the only interest which the plaintiff seeks to impeach is that of the *cestuis que trust;* yet they are not before the court, nor can they, by any process, be made parties in this ejectment suit, nor even be permitted to make themselves parties if they desired to do so, and cannot have an opportunity of adducing testimony in defense of their rights."

In our judgment, the earmark of "trustee" on one account, and "agent" on another put the creditor on notice that others than Joyce had beneficial interest in the deposits; and his uncontradicted testimony indicated that he had no such interest. Under the authorities just cited he was the party, and the only party, to enforce in a legal as distinct from an equitable proceeding, the rights of the *cestuis que trust,* and as "trustee" and "agent" he was in legal contemplation a different person from Joyce the judgment debtor, and entitled to assert the claims of the beneficiaries. Any different view would deprive them of the statutory remedy and drive them into a court of equity: and we cannot conceive that the statute so intends.

Finally, it is urged that the trial judge should, as requested,

have directed verdicts in favor of the execution creditor. We see no error here. The testimony was indefinite as to the identity of the beneficial owners, but was definite that such owners existed and were entitled.

We conclude that the writ should be dismissed, with costs.