930 A.2d 457 (2007)
395 N.J. Super. 597
DEPARTMENT OF ENVIRONMENTAL PROTECTION, Plaintiff-Appellant,
v.
Johan KAFIL, Monica Kafil, Faramarz Ebrahimi, Gregory Maschou, Tsungas Petroleum, Inc., Best Oil Corporation, Parsco, Inc., Harry Rohrer and H.O.R. & M.G.R. LLC, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 2007.
Decided August 15, 2007.
*458 Rachel Jeanne Lehr, Deputy Attorney General, argued the cause for appellant (Stuart Rabner, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Ms. Lehr, on the brief).
Arthur P. Zucker, Hackensack, argued the cause for respondents Kafil, Tsungas Petroleum, Inc. and Best Oil Corporation (Ferro Laballa & Zucker, attorneys; Mr. Zucker, of counsel and, with Russell T. Brown, on the brief).
Golub & Isabel, Totowa, attorneys for respondent Moschou, relying on brief submitted on behalf of respondents Kafil, Tsungas Petroleum, Inc. and Best Oil Corporation.
Williams, Caliri, Miller & Otley, Wayne, attorneys for respondents Rohrer and H.O.R. & M.G.R., LLC, relying on brief submitted on behalf of respondents Kafil, Tsungas Petroleum, Inc. and Best Oil Corporation.
No brief was filed by any other party.
Before Judges KESTIN, WEISSBARD and PAYNE.
The opinion of the court was delivered by
KESTIN, P.J.A.D. (retired and temporarily assigned on recall).
Plaintiff, the Department of Environmental Protection (DEP or the Department), appeals from certain provisions of an interlocutory order entered on March 1, 2006, granting partial summary judgment to some of the defendants; an order entered on May 3, 2006, denying reconsideration; and a final order entered on June 15, 2006, which resolved all issues pending between the parties but preserved for appeal those rulings that denied DEP the right to proceed, under N.J.S.A. 58:10-23.11u, a section of the Spill Compensation and Control Act (the Spill Act), for injunctive relief from the trial court to remediate conditions alleged to have violated the Act and other statutory and regulatory provisions.
On November 12, 2001, DEP filed a complaint, later amended, invoking the right to proceed in a summary manner pursuant to N.J.S.A. 13:1D-9, N.J.S.A. 58:10A:24.6a, and Rule 4:70; alleging violations of the Spill Act, N.J.S.A. 58:10-23.11 to -23.14, and the legislation dealing with the underground storage of hazardous substances, commonly known as the Underground Storage Tank Act (USTA), N.J.S.A. 58:10A-21 to -37; and seeking "an [o]rder of injunctive relief compelling defendants to close their underground storage tanks [(USTs)] for failure to upgrade the tanks according to law, compelling defendants to remediate where necessary, assessing maximum statutory penalties for violation of these statutes and the regulations promulgated pursuant *459 thereto, and enjoining defendants from operating any businesses with [USTs] that are not in compliance." The complaint also sought "reimbursement under the Spill Act for the damages [DEP] ha[d] incurred, and will incur, for any natural resource of this State that had been, or may be, damaged or destroyed by the contamination at the sites."
The complaint alleged specifically that defendants, in violation of the USTA, had falsely certified all of the USTs at eight gasoline stations to have been in compliance with the USTA when, in fact, defendants had not upgraded the tanks by the statutorily imposed deadline, December 22, 1998, to include spill and overfill protection as well as corrosion protection, and had acted in disregard of other safeguards mandated by statute and regulation. The complaint also alleged violations of the Spill Act, including that discharges of hazardous substances had occurred and that defendants had neither reported nor investigated those incidents.
The expressed basis of the trial court's March 1, 2006 order was, inter alia, that the statutory authority conferred on DEP to seek injunctive relief in a civil action did not extend to compelling action such as remediation. In reconsidering the matter, the trial court adhered to its initial conclusion, but qualified the reasoning to opine that the statutory provisions at issue "prohibit[ed DEP] from seeking a court ordered injunction for remediation in the first instance" because DEP "is compelled[,]" first, "to utilize its own environmental expertise and determine whether remediation is appropriate."
When reviewing a trial court's interpretation of law we engage in a de novo consideration without affording any special deference to the trial court's views. Manalapan Realty v. Township Committee of Manalapan Twp., 140 N.J. 366, 378, 658 A.2d 1230 (1995).
The trial court was well warranted in correcting its initial narrow view of the scope of the injunctive remedy provided by statute. Certainly, as a matter of definition and historic development, the injunctive remedy includes the power to order mandatory relief as well as prohibitory relief. See Ballentine's Law Dictionary, 626 (3d ed.1969); Black's Law Dictionary, 788 (7th ed.1999).
We disagree with the trial court's later view that, before DEP may file a civil action invoking the pertinent statutes and seeking injunctive relief remediating environmental violations, it must first employ its extensive regulatory power and "environmental expertise and determine whether remediation is appropriate." The trial court opinion also states: "If the DEP makes this determination, it can then issue a directive to remediate the subject properties or even order the facility closed. N.J.S.A. 58:10-23.11f. Once this has occurred, the DEP can then seek to have its directives enforced." Unquestionably, this option is available to DEP, but the existence of such an alternative cannot be seen to bar DEP from availing itself, at its reasonable election, of another remedy clearly established in N.J.S.A. 58:10-23.11u, a direct civil action seeking injunctive relief. In construing the scope of the authority granted by the Legislature to an administrative agency, courts are obliged to afford a generous interpretation of the powers granted and, out of respect for the policy determinations of the Legislature and the role of the executive branch, to find valid any exercise of authority that is fairly within the scope of the legislative grant of authority and furthers the policies sought to be achieved. See, e.g., Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 211-18, 584 A.2d 784 (1991); Malone v. *460 Fender, 80 N.J. 129, 134-39, 402 A.2d 240 (1979); see also Clymer v. Summit Bancorp, 171 N.J. 57, 792 A.2d 396 (2002).
By their terms, N.J.S.A. 58:10-23.11f, upon which defendants relied before the trial court in advocating the position eventually adopted by that court, and N.J.S.A. 58:10-23.11u, upon which DEP relied, were initially enacted at the same time as provisions of the Spill Act. They are differently premised, but co-exist as part of an overall statutory scheme.
On its face, N.J.S.A. 58:10-23.11f addresses the scope of administrative remedies available to the Department when there has been a discharge of a hazardous substance. It enables the Department to move swiftly to deal with the discharge in a variety of ways.
N.J.S.A. 58:10-23.11u deals with the steps authorized when other infractions are alleged, such as violations of Spill Act standards, regulations, or Department directives connected with Spill Act enforcement. It allows the filing of a civil action for injunctive relief and other remedies.
The USTA has a provision comparably designed to provide the Department with all the remedial tools necessary to promote statutory compliance. N.J.S.A. 58:10A-24.6a authorizes a civil action for "injunctive or other appropriate relief to prohibit and prevent [] violation" of that Act, contemplating that "the court may proceed in the action in a summary manner."
The complaint in this matter sought remediation as well as other relief for violations of both the Spill Act and the USTA. The statutes, dealing with closely related subject matters, must be read in pari materia to promote interpretive harmony and consistent application. See American Fire & Cas. Co. v. Division of Taxation, 189 N.J. 65, 79-80, 912 A.2d 126 (2006); Ramapo River Reserve Homeowners Ass'n v. Borough of Oakland, 186 N.J. 439, 450-51, 896 A.2d 459 (2006); Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15, 878 A.2d 829 (2005). To hold that the enforcement tools available to DEP are limited by one or another mechanism established in the several statutes that, together, govern the area, is to deprive the Department of the broad remedial sweep so evidently contemplated by the Legislature, especially where the relief sought cuts across and combines various ends contemplated in the statutes at hand and chooses, by way of procedural approach, from among the various remedial avenues authorized by statute. The scope of such powers, so manifestly designed by the Legislature to promote the public interest, should not be viewed with as grudging an approach as the trial court took here.
Even if we were to view the limitation set in place by the trial court as applying, severably, only to the scope of action allowed DEP in respect of the particular effort to seek remediation of direct Spill Act violations, as distinguished from other statutory or regulatory lapses also pled in the complaint, it is not reasonably possible to see the agency's choices to be as circumstantially circumscribed as the trial court held. It is not the place of a court to weigh the propriety of the remedial path chosen from among several nominally authorized by the same statute or cognate legislation, but rather only to determine whether the agency plaintiff has met whatever burdens of proof are assigned to it under law.
The trial court's ruling is reversed and the matter is remanded for such further proceedings as may be appropriate in the context of the civil action.