973 A.2d 973 (2009)
408 N.J. Super. 124
Donna HAND, Plaintiff-Respondent,
v.
PHILADELPHIA INSURANCE COMPANY, Defendant-Appellant,
v.
AAA Mid-Atlantic Insurance Company, Third-Party Defendant-Respondent.
Docket No. A-1957-07T1
Superior Court of New Jersey, Appellate Division.
Argued November 6, 2008.
Decided July 1, 2009.
*976 Christopher J. O' Connell, Westmont, argued the cause for appellant (Sweeney & Sheehan, attorneys; Neal A. Thakkar, on the brief).
Robert Aaron Greenberg, Cherry Hill, argued the cause for respondent (Aronberg & Kouser, P.A., attorneys; Mr. Greenberg, on the brief).
Gerald H. Baker, Hoboken, argued the cause for amicus curiae New Jersey State Bar Association (Baker, Pederson & Robbins, attorneys; Mr. Baker and Peggy Sheahan Knee, Amirali Haidri, on the brief).
Michael J. Maggiano, Fort Lee, argued the cause for amicus curiae ATLA-NJ (Maggiano, DiGirolamo, Lizzi & Roberts, P.C., attorneys; Mr. Maggiano and Daniel C. LaTerra, on the brief).
Respondent AAA Mid-Atlantic has not filed a brief.
Before Judges PARRILLO, LIHOTZ and MESSANO.
The opinion of the court was delivered by
MESSANO, J.A.D.
On January 19, 2005, an SUV owned and operated by Leroy Gorman crossed the median of State Highway 42 and collided with a car owned by Steininger Behavioral Care (Steininger), the employer of plaintiff Donna Hand, a passenger in the vehicle. Plaintiff was seriously injured as a result. Steininger's car was insured under a commercial automobile policy issued by defendant Philadelphia Insurance Company that provided uninsured/underinsured motorist (UM/UIM) coverage in the amount of $1 million. Named "insureds" on the declarations page of the policy included Steininger, SCBS Supportive Housing I, Inc., and Guidance Center of Camden County, Inc.[1] The policy further *977 provided that "[i]f the [n]amed [i]nsured" was "[a] partnership, limited liability company, corporation or any other form of organization," then additional "insureds" under the policy included "[a]nyone `occupying' a covered `auto' ...." The policy included a step-down provision that expressly limited the amount of UM/UIM coverage if
(1) An insured [wa]s not the individual named insured under th[e] policy;
(2) That "insured" [wa]s an individual named insured under one or more other policies providing similar coverage; and
(3) All such other policies ha[d] a limit of insurance for similar coverage which [wa]s less than the [l]imit of [i]nsurance for th[e] coverage[.]
Under these circumstances, "the most [defendant] w[ould] pay for all damages resulting from any [] `accident' with an `uninsured' ... or `underinsured motor vehicle'" would be limited to "the highest applicable limit of insurance under any coverage form or policy providing coverage to that `insured' as an individual named insured."
Gorman's insurance limit was $100,000. After receiving notification from plaintiff pursuant to Longworth v. Van Houten, 223 N.J.Super. 174, 538 A.2d 414 (App.Div. 1988), defendant authorized settlement with Gorman for the full policy amount. Plaintiff then made a claim for UIM benefits under Steininger's policy and demanded arbitration.
Defendant denied plaintiff's claim, contending that because plaintiff's personal automobile insurance policy, issued by third-party defendant AAA Mid-Atlantic Insurance Company (AAA), contained a UM/UIM limit of $100,000, the step-down provision in Steininger's policy became operational.[2] As a result, the available UIM limit under the policy was $100,000, thus, Gorman's vehicle was not underinsured, and plaintiff had no claim for UIM benefits.
On April 2, 2007, plaintiff filed her complaint seeking to compel arbitration. On April 27, 2007, defendant filed its answer asserting the step-down provision as a defense. Thereafter, on September 10, 2007, the Governor signed S-1666, the so-called "Scutari Amendment" (the Amendment), ultimately codified as N.J.S.A. 17:28-1.1(f), which we discuss in greater detail below.[3]
Defendant and plaintiff both filed motions for summary judgment, returnable November 2, 2007. Defendant argued that Pinto v. N.J. Manuf. Ins. Co., 183 N.J. 405, 874 A.2d 520 (2005), upholding the validity of step-down provisions in commercial automobile policies, was applicable to plaintiff's claim because the Amendment did not expressly provide for its retroactive application. Defendant further contended that retroactivity would result in "unconstitutional interference with a vested right" and violated due process.[4]
In response, plaintiff argued that the Legislature unambiguously expressed its intent to apply the Amendment retroactively. Alternatively, plaintiff contended that even if the Amendment were ambiguous *978 in this regard, extrinsic sources routinely utilized in statutory interpretation compelled the same result. In particular, plaintiff argued the Amendment was "curative[,]" i.e., a legislative response to the Supreme Court's holding in Pinto intended to correct the Court's misapplication of the UIM statute.
In an oral opinion placed on the record, the motion judge concluded the Amendment should be applied retroactively, and accordingly, granted summary judgment in favor of plaintiff.[5] The judge's decision was memorialized in an order dated the same day, and defendant's appeal ensued.[6]

I.
On appeal, defendant argues that the Amendment should be given only prospective application because it does not "pass the first prong of the inquiry set forth in Twiss v. State, Dep't of Treasury, [124 N.J. 461, 591 A.2d 913 (1991)]." Specifically, defendant contends the Legislature did not "clearly express its intent" regarding retroactivity, "the reasonable expectations of insurers and insureds do not warrant retroactive application[,]" and the amendment was not "curative[.]" Defendant further argues that retroactive application "would result in a manifest injustice to insurers[.]" Lastly, defendant notes that since the appeal was filed and briefed, a panel of our colleagues decided Olkusz v. Brown, 401 N.J.Super. 496, 951 A.2d 1069 (App.Div.2008), determining the Amendment lacked express, unambiguous language evidencing retroactivity, was not "curative" and, thus, did not apply retroactively. Defendant contends we should reach the same result.[7]
In urging us to affirm the motion judge's ruling, plaintiff asserts similar arguments to those she raised below. Both amicus curiae filed briefs supporting the motion judge's decision to apply the statute retroactively.
When reviewing a grant of summary judgment, we employ the same standards used by the motion judge. Atl. Mut. Ins. Co. v. Hillside Bottling Co., Inc., 387 N.J.Super. 224, 230, 903 A.2d 513 (App. Div.), certif. denied, 189 N.J. 104, 912 A.2d 1264 (2006). We first determine whether the moving party has demonstrated there were no genuine disputes as to material facts; we then decide "whether the motion judge's application of the law was correct." Id. at 230-31, 903 A.2d 513. We owe no deference to the motion judge's conclusions on issues of law. Id. at 231, 903 A.2d 513 (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995)). Here, the essential facts were not disputed, and the judge's decision was purely a legal one to which we apply de novo review. Dep't of *979 Envtl. Prot. v. Kafil, 395 N.J.Super. 597, 601, 930 A.2d 457 (App.Div.2007).
We have considered the parties' arguments in light of the record and applicable legal standards. We hold that the Legislature implicitly intended that the Amendment have retroactive effect. However, for the reasons that follow, we also conclude that applying the Amendment retroactively to the facts of this case would be unfair and work a manifest injustice to the contractual rights of defendant. We therefore reverse.

A.
We begin by briefly reviewing the Court's holding in Pinto. There, the facts were similar to the case at hand, and the employer's UIM policy language was identical to that contained in defendant's policy with Steininger. See Pinto, supra, 183 N.J. at 407-10, 874 A.2d 520. The Court found "the language of the step-down clause [was] enforceable" as written, id. at 412, 874 A.2d 520, and affirmed our denial of the plaintiff/employee's claim for UIM benefits under the policy. Id. at 417, 874 A.2d 520.
Pinto was decided June 6, 2005. The Amendment was legislatively filed on March 13, 2006 and ultimately enacted on September 10, 2007. It provides:
Notwithstanding the provisions of this section or any other law to the contrary, a motor vehicle liability policy or renewal of such policy of insurance, ... issued in this State to a corporate or business entity ... shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy. A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

[N.J.S.A. 17:28-1.1(f) (emphasis added).]
By its terms, the Amendment was to be effective "immediately." L. 2007, c. 163 § 2.
A legislative statement that accompanied the bill provided in relevant part:
This bill prohibits the use of "step-down" provisions in motor vehicle liability policies issued to corporate or business entities to lower uninsured or underinsured motorist coverage for employees to the limits of coverage available to the employees under their personal policies.
This bill is in response to the New Jersey Supreme Court's decision in Pinto v. New Jersey Manufacturers Insurance Company, 183 N.J. 405, 874 A.2d 520 (2005)....

This bill reverses the effect of the Pinto decision by prohibiting step-down provisions in these policies. Further, the bill expressly provides that a policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under that particular policy to any individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy, or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

*980 [Statement accompanying L. 2007, c. 163 (emphasis added).]
Defendant concedes that if the Steininger policy was issued after the effective date of the Amendment, its step-down provision would violate N.J.S.A. 17:28-1.1(f), and the policy would be "deemed to provide" any of Steininger's "insured[]" employees with the same $1 million of UIM insurance available to the policy's named corporate insureds.
In Olkusz, under slightly different facts, the panel confronted the same issue before us"whether [the] amendment to N.J.S.A. 17:28-1.1, adopted by the Legislature on September 10, 2007, reversing the Supreme Court's holding in Pinto, and prohibiting the use of step-down clauses, should be applied retroactively." Olkusz, supra, 401 N.J.Super. at 499, 951 A.2d 1069. There, plaintiff was injured while riding on her employer's shuttle bus that stopped suddenly to avoid colliding with an unidentified vehicle. Ibid. Although her employer's policy, issued by Federal Insurance Company (Federal), contained a UM limit of $1 million, it also contained provisions that "contractually den[ied] plaintiff access to her employer's UM coverage by limiting the maximum amount of UM benefits to the coverage limit contained in her personal auto policy." Id. at 500, 951 A.2d 1069.
On March 12, 2007, the trial judge granted Federal partial summary judgment "holding that [the] plaintiff was bound by the step-down provision in her employer's business auto policy." Ibid. After the Amendment was enacted, in September 2007, the plaintiff's personal insurer moved for reconsideration. The trial judge granted the motion, concluding the Amendment "applied retroactively to any case pending or `in the pipeline,' at the time of [its] passage." Id. at 501, 951 A.2d 1069.
In reversing the trial judge, our colleagues determined that
[a]bsent a clear indication from the Legislature as to the effect of this statute, we hold that well-established principles of statutory interpretation require that we construe the statute's restriction on the common law right of freedom to contract prospectively. The statutory prohibition at issue cannot be viewed as "curative," because the holding in Pinto was not predicated on a misapprehension of established legislative policy.
[Id. at 499, 951 A.2d 1069.]
As a result, they held that "[a]ny UM/UIM claim predicated upon an accident which predates the adoption of N.J.S.A. 17:28-1.1(f) must be governed by the legal principles articulated by the Supreme Court in Pinto[.]" Id. at 506, 951 A.2d 1069.

B.
As did our colleagues in Olkusz, we analyze the issue presented using well-recognized canons of statutory interpretation. "`When considering whether a statute should be applied prospectively or retroactively, our quest is to ascertain the intention of the Legislature.'" Twiss, supra, 124 N.J. at 466, 591 A.2d 913 (quoting State, Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 498, 468 A.2d 150 (1983)). Although our courts have "'long followed a general rule of statutory construction that favors prospective application of statutes[,]'" Cruz v. Cent. Jersey Landscaping, Inc., 195 N.J. 33, 45, 947 A.2d 1228 (2008) (quoting Gibbons v. Gibbons, 86 N.J. 515, 521, 432 A.2d 80 (1981)), that rule "is one only of statutory interpretation." Twiss, supra, 124 N.J. at 467, 591 A.2d 913. "Its purpose is to aid the court in the search for legislative intent." Ibid. (citing Rothman v. Rothman, 65 N.J. 219, 224, 320 A.2d 496 (1974)).
*981 An exception to the general rule of prospective application exists "if the Legislature expresses an intent that the statute is to be applied retroactively[.]" Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 571, 940 A.2d 1202 (2008) (citing Gibbons, supra, 86 N.J. at 522, 432 A.2d 80). If the intention to apply the statute retroactively is expressed, then "the statute should be so applied." Ibid. The Legislature may express its intent "either explicitly or implicitly[.]" Twiss, supra, 124 N.J. at 467, 591 A.2d 913. "Courts have found that the Legislature implicitly intended retroactive application when such an application was `necessary to make the statute workable or to give it the most sensible interpretation.'" Ibid. (quoting Gibbons, supra, 86 N.J. at 522, 432 A.2d 80) (emphasis added).
Our colleagues on the Olkusz panel concluded that the Legislature failed to evidence any intent, either explicitly or implicitly, regarding retroactivity. Finding "[n]either the statute nor the accompanying legislative statement addresse[d] the question[,]" the panel determined a retroactive construction of the Amendment was "inapplicable on its face." Olkusz, supra, 401 N.J.Super. at 503, 951 A.2d 1069. We part company with our colleagues as to this initial determination.
We concede that the Amendment does not explicitly state the Legislature's intention. However, we conclude that the very language of the Amendment implies that the Legislature intended it apply retroactively. We reach this conclusion applying canons of statutory construction as time-honored as those already referenced.
"Our analysis ... begins with the plain language of the statute[,]" DiProspero v. Penn, 183 N.J. 477, 493, 874 A.2d 1039 (2005), which "is ordinarily the `surest indicator' of [the Legislature's] intent." Frugis v. Bracigliano, 177 N.J. 250, 280, 827 A.2d 1040 (2003) (quoting Cornblatt v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998)). "It is not the function of [a] [c]ourt to `rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language.'" DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 (quoting O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002)). "Throughout, our analysis is informed by the injunction that `words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.'" In re Liquidation of Integrity Ins. Co., 193 N.J. 86, 94, 935 A.2d 1184 (2007) (quoting Soto v. Scaringelli, 189 N.J. 558, 570-71, 917 A.2d 734 (2007)) (in turn quoting N.J.S.A. 1:1-1). Thus, a court should not look beyond the plain language of the statute and resort to extrinsic sources to divine legislative intent when "the statutory language is clear and unambiguous, and susceptible to only one interpretation...." DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 (internal quotations and citations omitted).
One more maxim of statutory interpretation bears particular relevance to our inquiry. "When interpreting a statute... we endeavor to give meaning to all words" used by the Legislature. DKM Residential Props. Corp. v. Twp. of Montgomery, 182 N.J. 296, 307, 865 A.2d 649 (2005) (citing Franklin Tower One v. N.M., 157 N.J. 602, 613, 725 A.2d 1104 (1999)). As the Supreme Court has recently said, "[i]nterpretations that render the Legislature's words mere surplusage are disfavored." In re Commitment of J.M.B., 197 N.J. 563, 573, 964 A.2d 752 (2009); Clendaniel v. New Jersey Mfrs. *982 Ins. Co., 96 N.J. 361, 367, 476 A.2d 263 (1984) (construing the statutory language of N.J.S.A. 39:6A-10, noting any "construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided") (quoting Abbotts Dairies, Inc. v. Armstrong, 14 N.J. 319, 328, 102 A.2d 372 (1954)). We turn, then, to the language of the Amendment itself.
In its first sentence, the Amendment provides that all commercial automobile policies "or [the] renewal of such polic[ies]" "shall not provide less ... underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy." (Emphasis added). Defendant concedes that this makes the Amendment applicable to all policies issued after the statute's effective date. However, if that was all the Legislature intended, the language regarding the renewal of such policies would be unnecessary. In other words, if the Legislature only intended to affect an insurance policy issued after September 10, 2007, having once declared that any policy "shall not provide" less UIM coverage than that provided to the business entity, expressing the same intention as to subsequent renewals of such a policy would be superfluous. By making the prohibition applicable to renewals of automobile insurance policies, it would seem the Legislature clearly intended to affect policies in existence as of the effective date of the act, whose renewals, absent amendatory riders for example, might not remove the prohibited language of the step-down clause.
The second sentence of the Amendment would likewise be unnecessary if indeed we accepted defendant's interpretation. It provides that "[a] policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum ... underinsured motorist coverage available under the policy[.]" (Emphasis added). Presumably, new policies-those issued after September 10, 2007-would not contain the prohibited step-down clause because the first sentence of the Amendment prohibits them from being issued in that form. Thus, those insurance contracts would not need reformation, i.e., "be deemed" to provide the same levels of UIM insurance to employees as it did to the business entity. It follows that by including this second sentence, the Legislature intended to reform those policies already in effect on September 10, 2007. See Watkins v. Davis, 268 N.J.Super. 211, 212-13, 633 A.2d 112 (App.Div.1993) (where we characterized the effect of the "deemer" statute, N.J.S.A. 17:28-1.4, to be the "automatic reformation of out-of-state policies").
At oral argument before us, and indeed before the motion judge, defendant offered no independent interpretation of the Amendment's second sentence. Instead, it argued that the sentence was intended to affect "renewals moving forward," we assume meaning that by including the language, the Legislature intended only to supply a remedy in the event any policy renewed after September 10, 2007 continued to contain the offending step-down provision. However, that is accomplished by the Amendment's first sentence, and, by its very language, the "deeming" provision applies to a "policy" and not a renewal. We assume that the Legislature, which used the disjunctive "policies or renewals" in the first sentence, could have chosen to include "renewals" in the second sentence of the Amendment, if that is what was intended. See GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 308, 625 A.2d 468 (1993) (noting that when "the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded"). In short, defendant's contention that the *983 "deeming" provision applies only to prospective policy renewals finds no support in the language of the Amendment itself.
We therefore conclude that the Legislature impliedly intended to reform all commercial vehicle insurance policies in existence on the effective date of the Amendment, and to provide an immediate remedy to those making a claim for coverage under their employer's UM/UIM policy provisions as of that date. Because those are the facts presented in this case, we conclude that the Legislature intended to provide plaintiff with a claim for UIM benefits under Steininger's policy of insurance.

C.
Our conclusion in this regard, however, only answers the first part of what is a two-prong inquiry. As the Supreme Court noted:
Two questions inhere in the determination whether a court should apply a statute retroactively. The first question is whether the Legislature intended to give the statute retroactive application. If so, the second question is whether retroactive application is an unconstitutional interference with "vested rights" or will result in a "manifest injustice."
[Twiss, supra, 124 N.J. at 467, 591 A.2d 913 (internal citations omitted).]
We therefore must continue with our analysis.
"Retroactive legislation that impairs or destroys a `vested right' may violate the due process clauses of the federal... or state ... constitutions." Id. at 469, 591 A.2d 913 (internal citations omitted). "Retroactive civil legislation, however, generally does not violate due process unless it results in `particularly harsh and oppressive' consequences." Id. at 469-470, 591 A.2d 913 (quoting Ventron, supra, 94 N.J. at 499, 468 A.2d 150). A "`vested right' encompasses a fixed interest entitled to protection from state action[.]" Twiss, supra, 124 N.J. at 470, 591 A.2d 913. However, our Court has held "`[t]here can be no vested right in the continued existence of a statute ... which precludes its change or repeal.'" Phillips v. Curiale, 128 N.J. 608, 620, 608 A.2d 895 (1992) (quoting Savarese v. New Jersey Auto. Full Ins. Underwriting Ass'n, 235 N.J.Super. 298, 309, 562 A.2d 239 (App.Div.1989)).
Defendant claims the retroactive application of the Amendment violates its vested contractual rights. However, not every modification of existing contractual rights through retroactive application of a statutory change is unconstitutional. As the Court has noted,
It is well-established that legislation that has as its rational public purpose the necessary protection of the health, safety, and welfare of the public, and is within the police power of the state ... may be applied retroactively to alter or abrogate existing contractual rights without affecting its validity under the contract clause of the United States or New Jersey Constitutions.
[So. Hamilton Assocs. v. Mayor & Council of Morristown, 99 N.J. 437, 444, 493 A.2d 523 (1985); see also Edgewater Inv. Assocs. v. Edgewater, 103 N.J. 227, 510 A.2d 1178 (1986).]
The analysis requires consideration of three issues. "To be an unconstitutional impairment of contracts, legislation (1) must substantially impair a contractual relationship; (2) must lack a significant and legitimate public purpose; and (3) must be based upon unreasonable conditions and be unrelated to appropriate governmental objectives." State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 64, 590 A.2d 191 (1991).
*984 We have no doubt that the retroactive application of the Amendment "substantially impair[s]" defendant's contractual rights because it results in an "unbargained-for expansion of coverage, gratis, resulting in [defendant's] exposure to a risk substantially broader than that expressly insured against in the policy." Gazis v. Miller, 186 N.J. 224, 229, 892 A.2d 1277 (2006) (quotations and citations omitted). However, we are equally convinced that defendant cannot meet the other two prongs of the test. Clearly the retroactive application of the Amendment serves a legitimate public purpose and does so in a specific and targeted manner. Our courts have repeatedly recognized the public policy concerns that undergird the automobile insurance industry in this state, and the ability on the part of the Legislative and Executive branches to retroactively amend the statutory or regulatory scheme to achieve a desired result without violating the insurer's due process rights. See State Farm, supra, 124 N.J. at 64-65, 590 A.2d 191; Affiliated FM Ins. Co. v. State, 338 N.J.Super. 540, 561-62, 770 A.2d 741 (App.Div.2001); In re American Reliance Ins. Co., 251 N.J.Super. 541, 557, 598 A.2d 1219 (App.Div.1991), certif. denied, 127 N.J. 556, 606 A.2d 369 (1992). Thus, we do not believe the retroactive application of the Amendment presents an unconstitutional interference with defendant's "vested rights."
We do conclude, however, that retroactive application to the Amendment to the facts of this case would work a manifest injustice to defendant. Manifest injustice is found where the "affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute," and where "the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively." Gibbons, supra, 86 N.J. at 523-24, 432 A.2d 80. "This test does not flow from constitutional requirements, but instead is based on equitable concerns." Edgewater Inv. Assocs., supra, 103 N.J. at 239, 510 A.2d 1178 (citing Ventron, supra, 94 N.J. at 498, 468 A.2d 150). "[T]he manifest injustice standard involves a weighing process similar to that espoused in Rothman[.]" Edgewater Inv. Assocs., supra, 103 N.J. at 240, 510 A.2d 1178 (citations omitted). Succinctly stated,
A state may, in the exercise of the police power, enact a statute to promote the public health, safety, morals or general welfare. Such a statute, because of retroactive application or otherwise, may diminish in value or totally destroy an individual's right, whether in property as such or arising out of contract, provided that the public interest to be promoted sufficiently outweighs in importance the private right which is impaired.
[Rothman, supra, 65 N.J. at 225, 320 A.2d 496.]
To be considered in this weighing process is "the extent to which [defendant] changed [its] position in reliance on the existing law [] or had [its] reasonable expectations defeated." Phillips, supra, 128 N.J. at 625, 608 A.2d 895.
As our colleagues noted, defendant's reliance in this context "must be gauged by the legal principles governing the common law right of freedom to contract prevailing during the time of the accident." Olkusz, supra, 401 N.J.Super. at 505, 951 A.2d 1069. In Pinto, the Court explicitly noted that the then-prevailing case law "recognize[d] the legitimacy of step-down provisions even though they may result in differential treatment of similar plaintiffs based on the existence of other available insurance." Pinto, supra, 183 N.J. at 412, 874 A.2d 520 (citing Magnifico v. Rutgers *985 Cas. Ins. Co., 153 N.J. 406, 418, 710 A.2d 412 (1998)). Thus, the then-prevailing state of the law gave defendant "a reasonable basis to believe that its contractual provisions were proper and enforceable[.]" Olkusz, supra, 401 N.J.Super. at 506, 951 A.2d 1069. Retroactive application of the Amendment would clearly defeat both that reliance and reasonable expectation.
Plaintiff can raise no similar argument as to reliance or reasonable expectation if the Amendment is not applied retroactively. Plaintiff and amici attempt to paint a picture of unsettled legal precedent that pre-dated Pinto. As noted above, however, the Court explicitly rejected such a claim. We decline what is essentially an invitation to re-visit the historical antecedents of Pinto.
Nor do we accept plaintiff's and amici's arguments that her reasonable expectations of coverage under Steininger's policy are unfairly thwarted unless the Amendment is applied retroactively. NJSBA cites Lehrhoff v. Aetna Casualty, 271 N.J.Super. 340, 346-47, 638 A.2d 889 (App. Div.1994), where we held that a reasonable policy-holder would not look beyond the declarations page of their personal insurance for the essentials of insurance coverage. Lehrhoff is inapplicable, however, because the policy here is not plaintiff's personal auto policy. In Skeete v. Dorvius, 368 N.J.Super. 311, 845 A.2d 1265 (App.Div.2004), aff'd by 184 N.J. 5, 875 A.2d 859 (2005), we noted that:
[I]n enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.
[Id. at 319-320, 845 A.2d 1265 (citations omitted).]
In this case, plaintiff was not the policy holder and there is nothing in the record to indicate she was even aware of its provisions. The language of the policy is clear. Moreover, the Court in Pinto implicitly rejected the argument regarding unfair ambiguity in the contract language, noting with approval our decision in that case which found "nothing unclear, ambiguous or unfair about th[e] [step-down] provisions." Pinto, 183 N.J. at 416, 874 A.2d 520. We hasten to add that defendant provided UIM insurance under the policy at issue in full accordance with the enabling statute. This coverage was not illusory because it provided benefits to those employees of Steininger that did not maintain their own personal insurance policies. Pinto, supra, 183 N.J. at 416, 874 A.2d 520.
Prospective application of the Amendment clearly provides a substantial benefit to the public by providing broader UIM coverage to those occupying their employer's vehicles at the time of an accident. However, in light of the fact that this was something plaintiff neither relied upon nor reasonably expected at the time of the accident, we believe any public interest served is outweighed by the "deleterious and irrevocable" effects upon not only this defendant, but other insurers, if the Amendment was applied retroactively under the facts of this case.
That the retroactive application of the Amendment raises serious concerns of fairness is highlighted by the uncertain reach such a holding would have. In this case, the policy expired years before the Amendment was enacted. Retroactive application of the Amendment in these circumstances would enable a plaintiff to seek *986 benefits under any policy of insurance, whenever it was issued, as long as the statute of limitations, six years, had not expired. That universe of potential claimants might be further extended to a small degree by permitting minor plaintiffs, named-insureds on their own policies, to now present a claim for an earlier accident occurring even beyond the six-year limit. No one can, or has, legitimately estimated what the universe of potential claimants could in fact be.[8]
The extent of any retroactive application of the Amendment must also be considered. In other words, should the Amendment apply to effectively "reform" policies covering accidents for which no claim for UIM benefits was ever made, but for which the statute of limitations has not expired? Should it be applicable to cases in which a final determination had already been reached, but where reconsideration motions are now brought, as was the case in Olkusz? Or, should it be limited to all cases "in the pipeline," i.e., pending at the time the Amendment was enacted, or on direct appeal at the time? Because the Legislature spoke only in terms of policies and renewals, not causes of action, resolution of these questions remains uncertain, and would undoubtedly spawn further litigation. We raise these issues without deciding them, because they evidence further support for our conclusion that retroactive application of the Amendment under the facts of this case would be manifestly unjust.
We therefore reverse the order under review. Since the motion judge viewed the other aspect of defendant's motion for summary judgment, in which it sought a declaration that plaintiff was covered by the AAA personal insurance policy, as moot, we remand the matter for further proceedings to resolve that issue.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] What relationship, if any, existed between Steininger and these two other entities is not disclosed by the record.
[2] Plaintiff denied that the AAA policy was in effect on the day of the accident; however, in its answer to the third-party complaint, AAA admitted its policy with plaintiff was effective on that date.
[3] The bill was sponsored by State Senator Nicholas Scutari (D-Union).
[4] During oral argument before the trial judge, defendant also noted that the Steininger policy expired in October 2005, well before enactment of the Amendment. However, at oral argument before us, defendant indicated that it was not asserting the expiration of the policy as a fact of any consequence to our decision.
[5] Defendant also moved for summary judgment seeking a declaration that plaintiff was covered under the AAA policy at the time of the accident. In light of his ruling, however, the judge determined that issue was moot. He denied defendant's motion without prejudice, finding a material factual dispute. The issue is not before us.
[6] We subsequently permitted the New Jersey State Bar Association (NJSBA) and the New Jersey Association of Trial Lawyers of America to appear as Amicus Curiae and participate in oral argument.
[7] We are aware of other unreported decisions by our colleagues that have adopted Olkusz's rationale and reached the same result. See Misner v. N.J. Mfrs. Ins. Co., A-4737-07, 2009 WL 88354 (January 15, 2009); Orodenker v. Selective Ins. Co. of Am., A-4240-07, 2009 WL 510360 (March 3, 2009); Wall v. Occidental Fire & Cas. Ins. Co., A-4454-07, 2009 WL 498364 (March 9, 2009), certif. denied, 199 N.J. 516, 973 A.2d 384 (2009).
[8] Because the facts are not presented, we specifically have chosen not to engage in a similar analysis as to whether it would be manifestly unjust to apply the Amendment in a limited retroactive fashion to only those contracts of insurance extant on the Amendment's effective date, thereby limiting the Amendment's retroactive effect to a finite set of insurance policies, as opposed to an uncertain universe of potential claims.