23 A.3d 440

T & C LEASING, INC., PLAINTIFF–APPELLANT, v. WACHOVIA BANK, N.A., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 16, 2011—Decided July 8, 2011.

Before Judges AXELRAD, LIHOTZ [1] and J.N. HARRIS.

*Robert L. Grundlock, Jr.,* argued the cause for appellant (*Rubin, Ehrlich & Buckley, P.C.,* attorneys; *Mr. Grundlock,* on the briefs).

*Anthony L. Cotroneo* argued the cause for respondent (*Rosner, Nocera & Ragone,* attorneys; *Mr. Cotroneo* and *Peter A. Ragone,* on the brief).

The opinion of the court was delivered by

AXELRAD, P.J.A.D.

At issue in this appeal is whether a post-judgment bank account levy creates an ongoing restraint in the creditor's favor under Article 7 of the State's execution statutes, *N.J.S.A.* 2A:17–50 to –56.66, requiring the bank to turn over to the creditor funds deposited into the debtor's account after service of the writ on the bank. The trial court held the bank had no such continuing obligation. We affirm.

The facts are undisputed. In September 2008, plaintiff T & C Leasing, Inc. (T & C) obtained a default judgment against International Entrees Corporation (IEC) and Frederick W. Braman, III (collectively the debtors) in the amount of $75,783.52. On October 6, 2008, T & C secured a writ of execution, containing a rider directing the Camden County Sheriff to levy first on personal property belonging to the debtors. Pursuant to the rider, the

---

[1] Judge Lihotz did not participate in oral argument. However, the parties consented to her participation in the decision.

sheriff was directed to levy upon a variety of items of personalty, including "[a]ny and all bank accounts titled to or held by [the debtors], individually or collectively, at any bank or other financial institutions in your county...."

An April 21, 2009 sheriff's affidavit reported the levy had been successfully served on April 20 on a local branch of defendant, Wachovia Bank (Wachovia), and $1,890.82 in funds contained in the IEC bank account were available to the creditor.[2] The affidavit, in part, also contained the following computer-generated statement: "I hereby levy upon: any and all bank accounts, including CD's and any other monies due or to become due ... as of 4/15/2009, $82,752.02 including judgment, costs, interest, and sheriff's fees."

On April 29, 2009, the sheriff sent a notice to the debtors, with a copy to T & C pursuant to *Rule* 4:59–1(g). The notice stated that $1,890.82 had been levied upon at the bank at the instruction of T & C but the funds would not be taken from the account until ordered by the court.

On December 18, 2009, T & C obtained an order for turnover of funds directing Wachovia to pay the sheriff the $1,890.82 held in the IEC account pursuant to the writ of execution in partial satisfaction of the judgment. Wachovia did so on December 24, 2009.

T & C subsequently learned that $80,982.73 had been deposited into the IEC bank account from April 22 to May 29, 2009. It also ascertained that Braman had issued checks from this account payable to himself, cash, and others during this period.

On December 23, 2009, T & C filed suit against Wachovia, claiming it failed to honor the levy in violation of the execution statutes as it paid to the debtor or on its behalf funds subsequently deposited into the account. T & C sought a judgment pursuant

---

[2] The account contained $1,990.82; the bank retained a $100 processing fee.

to *N.J.S.A.* 2A:17–54 for the amount paid out by the bank in excess of the levy. T & C filed an answer.

On March 1, 2010, T & C moved for summary judgment. T & C posited that the execution had continuing effect and Wachovia was required to turn over any additional funds deposited into the account after the writ of execution was served until the underlying judgment was satisfied. T & C relied on *N.J.S.A.* 2A:17–50, authorizing execution against "wages, debts, earnings, salary, income from trust funds, or profits" that are "due and owing to the judgment debtor, or thereafter become due and owing to him ..." and *N.J.S.A.* 2A:17–51, stating that an execution on these items "shall become a lien and a continuing levy ... to the amount specified therein."

Wachovia filed a cross-motion seeking dismissal of the complaint, taking the position the execution was governed instead by *N.J.S.A.* 2A:17–15, which provides that "[m]oney belonging to a defendant in execution may be levied on and returned by virtue of an execution as so much money collected, without exposing the same to sale." Accordingly, Wachovia asserted it had no obligation to turn over to the creditor any funds moving through the IEC bank account after the date of service of the writ. The bank officer certified:

> Wachovia did not place any continuing restraint against the IEC account (other than the restraint against the sum of $1,890.82 ...) or any restraint against the funds subsequently deposited into the IEC Account following the Sheriff's levy against the Account, as the Execution did not provide for any continuing lien against the Account, nor was Wachovia served with any further writs of execution or orders that would provide for a continuing lien or other restraint against the IEC Account. Further, the Bank's procedures for the handling of executions and levies against customer bank accounts served and issued from the Courts of New Jersey, such as the Execution served upon Wachovia herein, is to restrain and segregate the funds on deposit in the account at the time an execution and levy is served, but not continually to restrain the account (absent any further order of the Court), as such execution and levies do not constitute continuing liens, nor provide any basis to further restrain the bank account.

Following oral argument on June 25, 2010, the court accepted Wachovia's argument, concluding the funds in a bank account appeared to be "a sum of money that exists at a finite moment in

time and would be subject to levy under [*N.J.S.A.*] 2A:17–15," and which was "a particular return of money that [T & C] received." The court reasoned that the reference in the sheriff's return of service to "due or to become due" applied to documents such as CDs or other time-deposit accounts that have an inchoate value. The court further noted there was no language in the original documentation that would have alerted the parties to interpret the writ "as the equivalent of a levy upon wages and the like," such as an instruction to the sheriff to conduct a continuing levy and notice to Wachovia of same. Nor was there any inquiry by T & C during the eight months between the notice of levy and the turnover order that would have placed Wachovia on notice of a contemplated continuing levy. The ruling was memorialized in orders dated June 28, 2010, granting Wachovia's motion and denying T & C's motion. This appeal ensued.

T & C renews its argument on appeal, contending the court erred in concluding the levy on the bank account was a levy on "money" pursuant to *N.J.S.A.* 2A:17–15. T & C submits the funds in a bank account are more properly characterized as a "debt" owed by the bank to the depositor under *N.J.S.A.* 2A:17–50 and, as such, the Wachovia account is subject to a continuing levy until the judgment is satisfied.

When reviewing a grant of summary judgment, we employ the same standards used by the motion judge under *Rule* 4:46. *Prudential Prop. & Cas. Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App.Div.), *certif. denied,* 154 *N.J.* 608, 713 *A.*2d 499 (1998). As neither party argues there are any genuine issues of material fact—both parties having moved for summary judgment—the issue is thus whether the motion judge's application of the law was correct. *Atl. Mut. Ins. Co. v. Hillside Bottling Co.,* 387 *N.J.Super.* 224, 230–31, 903 *A.*2d 513 (App.Div.), *certif. denied,* 189 *N.J.* 104, 912 *A.*2d 1264 (2006). We accord no deference to such legal conclusions, *Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.,* 202 *N.J.* 369, 382, 997 *A.*2d 954 (2010); *Manalapan Realty, L.P., v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658

A.2d 1230 (1995), which we review de novo. *Dep't of Envtl. Prot. v. Kafil,* 395 *N.J.Super.* 597, 601, 930 *A.*2d 457 (App.Div.2007).

A brief overview of the execution remedy and procedure is instructive. In *Deakman v. Odd Fellows Hall Ass'n,* 11 *N.J. Misc.* 646, 167 *A.* 741 (1933), the court held that an ordinary writ of execution against goods and chattels was the appropriate method for levying upon a judgment debtor's funds deposited in a bank. Noting that a judgment creditor could execute against the "body or the goods, or against the goods and lands of the party against whom the judgment was recovered" pursuant to the Practice Act of 1903, the court explained that the execution statutes were supplemented in 1915, making "rights and credits of a defendant" subject to levy. *Id.* at 647, 167 *A.* 741.

In *Moran v. Joyce,* 125 *N.J.L.* 558, 18 *A.*2d 708 (1941), the court elaborated that rights and credits may be levied upon as other personal goods and chattels, stating:

By the act of 1915, chapter 115, now *R.S.* 2:26–170, rights and credits may be taken and sold, or collected under execution, and by *R.S.* 2:26–171, "Sales of rights and credits in the nature of personal property shall be made in the manner provided by law for judicial sales of chattels." [3] The word "chattels" is of very broad import, and has been defined as including all kinds of property except the freehold and things which are parcel of it. 11 *C.J.* 383. It has been held to include negotiable instruments and mortgages.... In *Deakman v. Odd Fellows Hall Association,* 11 *N.J. Misc.* 646, 167 *A.* 741, we held that an execution against "goods and chattels" was sufficiently broad in language to support a levy on a bank balance. A reading of the Executions act as a whole indicates, in our opinion, a clear intent that with certain special provisions relating to the enforcement of a judgment against rights and credits, the general procedure, and particularly that touching disputes as to ownership of any property levied upon, was to be applicable....

[*Id.* at 561, 18 *A.*2d 708, *aff'd o.b.,* 127 *N.J.L.* 562, 23 *A.*2d 396 (E. & A.1942).]

*See also Cohen v. Cohen,* 126 *N.J.L.* 605, 609–10, 20 *A.*2d 594 (Sup.Ct.1941); *Vineland Sav. & Loan v. Felmey,* 12 *N.J.Super.* 384, 393–94, 79 *A.*2d 714 (Ch.Div.1950).

---

3 *R.S.* 2:26–170 provided that "Rights and credits of a defendant in execution, or within his custody or control as a representative if he is sued in a representative capacity, may be levied upon, taken and sold or collected by virtue of such execution." This statute and *R.S.* 2:26–171 are currently codified at *N.J.S.A.* 2A:17–59 and–60 in essentially identical language.

■ To be subject to levy and execution, such rights and credits must not only be liquidated, but must also be certain existing debts. *See Cohen, supra,* 126 *N.J.L.* at 610, 20 *A.*2d 594 (holding that a final lump sum payment on an insurance policy contingent on the debtor being alive at the distribution date was too uncertain and speculative to be subject to levy and sale under the execution laws).

We have also classified a savings account as a "chose in action" in which a debtor has subsisting interest and is, therefore, subject to levy under a creditor's writ of attachment even though the passbook was not seized nor its negotiation enjoined. *Am. Express Co. v. Vella,* 94 *N.J.Super.* 258, 260, 227 *A.*2d 721 (App.Div.), *certif. denied,* 49 *N.J.* 364, 230 *A.*2d 397 (1967).

We are not convinced it matters whether a bank levy is classified as "[m]oney belonging to a defendant" under Article 3 of Chapter 17, *N.J.S.A.* 2A:17–15 or, more likely, "rights and credits of an equitable nature" under Article 8, *N.J.S.A.* 2A:17–57. In either instance, a deposit account levy differs from Article 7 wage and related executions that create a continuing lien, *N.J.S.A.* 2A:17–50, in concept, policy and procedure.

Article 7, read literally, does apply to "debts" in that it authorizes post-judgment execution against "wages, debts, earnings, salary, income from trust funds, or profits" that are "due or owing to the judgment debtor, or thereafter become due or owing to [the judgment debtor]." *N.J.S.A.* 2A:17–50. It is apparent from the context of this Article, however, as well as the express language authorizing execution only if these items are in the "amount of $48.00 or more *a week,*" that the property subject to execution involves regularly recurring payments to the judgment debtor. *Ibid.* (emphasis added). Accordingly, there is logic to the continuing lien principle in Article 7, which is intended to capture, until paid, all such installments.

■ Generally, the relationship between a bank and a depositor is that of a debtor and creditor. *Pagano v. United Jersey*

*Bank,* 143 *N.J.* 220, 233, 670 *A.*2d 509 (1996) ("When a bank accepts a deposit from a depositor for either a checking or savings account, a creditor-debtor relationship typically is established."). The depositor becomes the bank's creditor by "[t]he deposit of funds into a general account [which] transfers ownership of the funds to the bank" and may also become the bank's debtor "[b]y borrowing money from the bank in a separate transaction." *All Am. Auto Salvage v. Camp's Auto Wreckers,* 146 *N.J.* 15, 24, 679 *A.*2d 627 (1996). Thus a bank account is not necessarily a "debt due" to the account holder from the bank in the sense the term is used in Article 7. Rather, considering the unpredictable nature of the deposits and withdrawals and the fluctuating balance on any given day, a bank account titled to a debtor is more akin to a sum of money, *N.J.S.A.* 2A:17–15, or a right and credit, *N.J.S.A.* 2A:17–57, belonging to the debtor, that is certain and subject to garnishment by a third party judgment creditor if the funds happen to be available at a specific point in time.

In this case, that point in time was April 20, 2009, the date upon which the writ of execution was served on the bank by the sheriff and when, according to the bank, it identified an account maintained by IEC with a balance of $1990.82, restrained and segregated the funds, and so advised the sheriff. T & C and the debtor were, in turn, given notice of the levy.

The Court Rules also reflect a different procedure for an Article 7 execution than an Article 3 or Article 8 execution. *Rule* 4:59–1(a) states that the process to enforce judgments is by writ of execution. *Rule* 4:59–1(d) provides, in part, that "[p]roceedings for the issuance of an execution against the wages, debts, earnings, salary, income from trust funds or profits of a judgment-debtor shall ... be on notice to the debtor." *See also R.* 6:7–3. The debtor may object and request a hearing. *Ibid.* In contrast, no advance notice is provided to the judgment debtor of a levy on personalty, realty, or on a bank account. *See R.* 4:59–1(a) (providing that a judgment-creditor is obligated to serve a copy of the fully endorsed writ on the judgment-debtor *after* a levy on the

debtor's property has been made by the sheriff and not less than ten days prior to turnover of the debtor's property to the creditor pursuant to the writ); *R.* 4:59–1(g) (providing that every levying officer shall, *on the date the levy is made,* mail that person or entity a notice advising of the levy and describing the process to obtain exemptions from the levy). *Cf. R.* 6:7–1(c) (Special Civil Part rules now except the filing of a copy of the notice to a debtor by the levying officer after a levy on a bank account).

We are not persuaded by T & C's argument that the generic computer-generated statement in the sheriff's affidavit of service that "I hereby levy upon any and all bank accounts, including CDs *and* any other monies due *or to become due* to . . . Braman," created an ongoing lien in IEC's bank account levied upon on April 20, 2009. We agree with the trial court's reasoning that the phrase "or to become due" would apply to a time-deposit account with an inchoate value, similar to a CD, which was not what was levied upon here.

We are satisfied T & C's bank levy was fixed in time as of the date the sheriff served the writ on Wachovia, i.e., the date the sheriff "took control" of the property. The execution and levy contained no language evidencing an intention to create a continuing lien against the debtor's bank account. In accordance with common banking procedure for the handling of executions and levies against customer bank accounts served and issued from New Jersey courts, Wachovia restrained and segregated the funds that were in the IEC checking account on that date, which amount was clearly noted on the sheriff's affidavit of service. T & C could have utilized the same writ of execution, which is valid for two years from the date of its issuance, *see N.J.S.A.* 2A:18–27; *R.* 4:59–1(a), and instructed the sheriff to return to Wachovia and make another levy at a specified time if it had reason to believe IEC had placed additional funds into its account or to intermittently return, as some creditors do at the beginning of the month when a debtor may routinely deposit funds into an account. It chose not to do so. Accordingly, upon being served with the

turnover order in December 2009, Wachovia was required to remit only those funds that had been levied upon on April 20, 2009.

Affirmed.